RECEIVED

JUL 3 1 2015
JUL 31 2015
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

# IN THE UNITED STATES DISTRICT COURT FOR
## THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

FRANK L. SIMMONS

**PLAINTIFFS**

V

) Case No.
)
)
)
)
)
)
)
)

15cv6747
JUDGE ST EVE
MAG JUDGE VALDEZ

ILLINOIS COOK COUNTY STATE'S ATTORNEY OFFICE
ILLINOIS COOK COUNTY CIRCUIT COURTS
AT&T
Anita M. Alvarez, Cook County State's Attorney
Anita M. Alvarez
Timothy C. Evans, Chief Judge - Circuit Court of Cook County
Timothy C. Evans
Paul Pavlus, Assistant State's Attorney
Paul Pavlus
Paul Pavlus - Circuit Court Judge of Cook County
Michele M. Pitman - Circuit Court Judge of Cook County
Michele M. Pitman
William J. Kunkle - Circuit Court Judge of Cook County
William J. Kunkle
John Thomas Carr - Circuit Court Judge of Cook County
John Thomas Carr
David W. Daudell – Attorney, David Daudell Law Firm
David W. Daudell
Donald R. Havis - Circuit Court Judge of Cook County
Donald R. Havis
Lester L. Barclay – Barclay, Dixon & Smith, P.C.
Lester L. Barclay
Julie A. Garmon, Esq
Ursula Gulley

**DEFENDANTS**

1

# COMPLAINT

1) Plaintiff, Frank L. Simmons, Petitioner, respectfully seek damages in connection with the false conviction of domestic battery in *People v Frank Simmons - 09-6-007235*; and the on-going conspiracy to suppress and conceal the matter through the use of; but not limited to allegations of domestic violence, coercion; coercion of a minor to commit perjury; false evidence; evidence tampering; perjury; obstruction of justice; conspiracy to obstruct justice; suppression and concealment of evidence including, but not limited to, court-ordered financial abuse in the effect of obstruction of justice; assault; various Federal and State mail / cyber fraud violations; and civil rights violations by any individual and/or person including, but not limited to, in the employment of and/or employee of the Illinois Cook County Circuit Court (ICCCC), Cook County State's Attorney Office (CCSAO) and/or individual(s) David William Daudell (David Daudell Law Firm: former criminal and divorce legal counsel to the Petitioner); Illinois Cook County Chief Judge, Timothy C. Evans; Illinois Cook County State's Attorney, Anita Alvarez; Cook County Assistance State's Attorney (ASA), Paul Pavlus; Cook County Circuit Court Criminal Associate Judge, Michele M. Pitman (formerly: Michelle R. McDowell-Simmons and/or Michele Simmons); Cook County Circuit Court Criminal Associate Judge, William J. Kunkle; Cook County Circuit Court Domestic Relations Associate Judge John Thomas Carr; Guardian-At-Litem (GAL), Attorney Lester Barclay; Attorney Julie A. Garmon, Esq.; and Ursula Gulley (an mother of Michele Simmons and AT&T Employee.

   **Important Note:** All sections referenced (**§**) can be found in **Motion #09600723501** (Appendix1) filed pro-se on March 5th, 2015 with the Illinois Cook County Circuit Courts Division of Bridgeview Courthouse

## Facts In Support of Plaintiff(s):

2) On the morning of Sunday, June 7th, 2009 at approximately 9:30AM, at the home of Frank Simmons and his then, former wife of seventeen (17) years, Cook County Circuit Court Associate Judge Michele M. Simmons, now known as *Michele M. Pitman*, mother of his three (3) children, 15-year old DAUGHTER#1; 13-year old SON#1, and 9-year old SON#2, in a premeditated criminal act of abuse (§ 21-25; 90-94) made false allegations of physical violence of SON#1 by father, Frank Simmons.

3) The Illinois Department of Children and Family Services (IDCFS); also found Michele Simmons' allegations of physical violence were "False", "Unfounded", and "Malicious" (Exhibit B) (§ 104); in their forty-plus page September 23rd, 2009 report [SCR #1868829-A (see: Exhibit A) (§ 104)]

4) By Illinois State Law, it is considered a crime to report false claims of abuse pursuant to Rules 300, Section 300.30.

5) [1] **IDCFS - Illinois State Law (pursuant to Rules 300, Section 300.30) states:** Records of unfounded CA/N reports and informal unfounded reports shall be retained for five years if the subjects of the report request retention in writing because they believe the report was an intentional false report. If the supervisor agrees that the report was an intentional false report, Department procedures for discouraging intentional false reports are to be followed. These procedures include SCR: • Notifying reporters who are believed to be reporting CA/N falsely that it is a violation of Illinois law to knowingly file a false report; and • Giving information about reporters who have filed an intentional false report to the State's Attorney for consideration of prosecution

6) Frank Simmons, the victim in a physically, verbally, and mentally abusive marriage, told her these very same words on the morning of June 7th, 2009 asked Michele to grant him a divorce; he felt enough was enough. Michele is a very vindictive and callous person.

7) *NBC News National News Correspondent Jeff Rossen of the investigative series 'The Rossen Reports' reported in his 10/03/14 on domestic violence states that 20% of all domestic abuse victims are men; 1 in 7 men are abused by a partner. Katie Rae Jones CEO of The National Domestic Abuse Hotline states many men and women, suffer in silence. When men reach-out for help from us they often say they tried to reach-out to someone, or their co-workers.*

8) Michele on numerous occasions, threatened Frank, stating that she could use her position, then as, an Assistant Cook County State's Attorney (ASA), to call the police make a false claim assault and have him arrested and prosecuted. These same malicious threats continued even after she became a Cook County Circuit Court Judge.

9) Michele Simmons became upset with Frank's request for a divorce on the morning of Sunday, June 7th, 2009 and when into an abusive violent tirade (§ 91-95). Michele made good her threat, of using her position of influence as a judge, to fabricate a false claim of abuse and him arrested; made homeless; prosecuted; convicted; and as per Michele, "never see his precious children again!"

10) Frank Simmons, in June 2009, was thrown-out of his home and prohibited for seeing his children by order of protection.

11) Frank Simmons was on convicted on March 19th, 2010 for the crime of Domestic Violence;

12) Frank was sentenced to one year probation and ordered to take domestic violence courses.

3

13) Frank Simmons refused to sign paperwork admitting guilt as a domestic violent offender. Since the IDCFS had no findings of abuse; the Cook County Probation Department changed his required coursework to 'Good Parenting'; of which 99% of the lesson plan, Frank had already been practicing through-out interaction with his children and other children knew him as 'Coach'.

14) The Yetter Law Group states: *"A domestic battery conviction in the State of Illinois has dire consequences. Aside from the obvious embarrassment and strain on your interpersonal relationships, domestic battery/violence convictions always remain on your record. This is one conviction that can never be sealed or expunged under Illinois law, except in the unusual circumstance that a convicted batterer receives a Governor's pardon. A domestic battery conviction can result in the limitation/loss of visitation or have unfavorable custody outcomes. Convicted offenders have difficulty getting some types of license and forfeit their 2nd Amendment right to carry a firearm. Many employers will not hire someone who has been convicted of domestic battery. Landlords and credit agencies also have access to the records of this conviction. Laws to protect domestic abuse victims are becoming increasingly proactive. However, this has taken away the ability of the police to exercise discretion in cases where the charges are being used manipulatively (e.g., in the case of divorce, where one partner wants the other removed from the home). The accusation of domestic battery alone yields serious consequences."*

15) On March 29th 2011, the Child Custody Trial, Domestic Relations Court awarded sole custody of their three children to Michele Simmons.

16) It is important for this Court to note that the child custody ruling was based solely on the fact that Frank had no stable home structure after being thrown-out his home of seventeen 17 years on June 7th, 2009, '*Michele M. Simmons vs. Frank Simmons* - **09-D-005497**'.

17) The child custody decision was not based upon fear of violence or for the protection of persons residing in the home with Frank Simmons. As a matter of fact, the subject of abuse was never brought-up during the many divorce court proceeding; until Michele brought it up every time as if in constant attempt to justify her lie to others whom were aware of the favor and some idea to the extent the Illinois Judiciary conspired to mask Michele's lie.

18) Despite having received the IDCFS's report SCR #1868829-A, the Illinois Cook County State's Attorney Office (CCSAO) falsely, continued to deny in court of having knowledge of and/or even having received IDCFS' report; thus, committing, but not limited to, the alleged criminal acts of '*perjury*' and '*obstruction of justice*'.

19) IDCFS' recommended that the CCSAO prosecute Michele Simmons for making false abuse allegations. 43. However, contrary to Illinois State Law pursuant to Rules 300, Section 300.30,

the CCSAO refused to even consider and/or prosecute Michele Simmons for making false allegations;

20) The Illinois Cook County State's Attorney (CCSA) Anita Alvarez, whom is a long-time friend and co-worker of Michele Simmons continued to endorse her false domestic violence charges and informed police that she would be personally handling the prosecution of Frank Simmons in the case '*People v. Frank Simmons*'.

21) Moreover, Michele Simmons' present boss and also personal friend, the Illinois Cook County Circuit Court (ICCCC) Chief Judge, Timothy C. Evans, gave personal assurances on June 8th, 2009, promising to avoid impropriety and ensured fairness in '*People v Frank Simmons - 09-6-007235* (§ 50); both criminal and in divorce proceeding running congruently '*People vs. Frank Simmons*' and '*Michele M. Simmons vs. Frank Simmons - 09-D-005497*,' respectively, were each overwhelmed with alleged blatant judicial misconduct, impropriety, conflicts of interest, ex parte communications, conspiracy, conspiracy to obstruct justice, obstruct of justice, concealment, and suppression of evidence in exclusively closed courtroom proceedings (Evans: §s 56-59; Kunkle: §s 31, 51, 62-73; Carr: 13-14, 53, 55; Brownfield: § 99-101

22) Around two (2) years into their over twenty (20) year relationship, Frank Simmons became routine victim of Michele's unwarranted jealous filled rants consisting of physical and verbal abuse. His physical attacks were sometimes bloody for Frank. To no avail, Frank had hoped that professional counseling along with the participation and advice from family and friends would remedy Michele's unreasonably violent outburst.

23) During her rants, Michele routinely threated Frank that she would use her influence and authority as then a Cook County State's Attorney, to make a false claim of physical abuse against him, and have him arrested and thrown into jail. She continued to use this threat even after becoming a Cook County Circuit Court Associate Judge. (§ 21-25; 90-94).

24) On the morning of Sunday, June 7th, 2009 at approximately 9:30AM, at the home of Frank Simmons and his former wife of seventeen (17) years, Cook County Circuit Court Associate Judge Michele M. Simmons, mother of his three (3) children, 15-year old DAUGHTER#1; 13-year old SON#1, and 9-year old SON#2, in a premeditated criminal act of abuse (§ 21-25; 90-94) made false allegations of Domestic Battery of SON#1 by Frank Simmons. The couple was on the verge of divorce. Four days later, Michele Simmons officially filed for divorce.

25) Mr. Simmons had been nothing more than a loving, faithful, model husband, and father to his three children, DAUGHTER#1, SON#1, and SON#2 (§ 19).

26) Michele was sexual promiscuous throughout the couple's relationships. It was easily recognizable that for the most part, Michele's violent and abusive outburst against Frank correlated with her wants to be with her other lovers.

27) Earlier on the morning of Sunday, June 7th, 2009; Frank told Michele that he could no longer endure her physical and verbal abuse and wanted a divorce.

28) Michele when into a violent tirade, yelling, cussing, beating, and kicking walls and doors and screaming. She fabricated a lie from a fight between their two sons at the home on the night of June 6th, 2009. Basically she was yelling, i.e. "Get the f*ck out of this house....You stomped in SON#1's chest and scratched him on the neck! I will make sure you never see these kids again!

29) Frank, experienced and concerned for his personal safety, locked himself in the bathroom; while Michele angrily attacked the bathroom door and outside walls, yelling for Frank to open the door and come out. (see: Hearing Transcript pg15 ln.12 thru pg17 ln.1-15).

30) The Illinois Cook County State's Attorney; Anita Alvarez was called that morning by Michele Simmons, her long-time friend. Anita Alvarez and Michele were former ASA colleagues at the Cook County State's Office.

31) Later, Frank was emerged from the bathroom once he heard that the police had arrived at the home. Michele informed that she was the Cook County Circuit Court Criminal Judge at the Markham Court House that hears the cases from Olympia Fields and demanded that they arrest Frank for fear of her and the children's safety.

32) Before he arrived at the police station just 3 minutes from his home; the on-duty desk officer was just hanging-up from a call stating that he had just received a phone call from the State's Attorney and Anita Alvarez is handling the Simmons Case personally and that she wanted to be kept informed on the case.

33) Anita Alvarez assigned alleged co-conspirator, CCSAO Rolling Meadows Department Head, Assistant State's Attorney (ASA) Paul Pavlus to the Bridgeview Court House to prosecute the criminal case (§ 45-49).

34) The Plaintiff's audio recorded conversation from the home after his arrest, Michele and co-conspirator, Ursula B. Gulley can clearly be heard coercing minor SON#1 to lie that his father, Frank, stomped in his chest and SON#1 in the audio recording crying, telling them that it was not true, that Dad did not stomp in his chest or hurt him as the Plaintiff listened-in in a three-way patch from the police station to his cellular recording device left at the home (§ 90) (Exhibit E).

35) Illinois Cook County Circuit Court (ICCCC) Chief Judge, Timothy C. Evans and co-conspirator made personal assurances to the Petitioners on June 8th, 2009 (§ 50) to avoid impropriety and ensure fairness; ordered Cook County, Markham 6-District Presiding Judge, Marjorie C. Laws to transfer Mr. Simmons' bail hearing from the Markham 6-District Courthouse to the Bridgeview Courthouse.

36) The Plaintiff, in June 2009, hired co-conspirator Attorney David Daudell as legal counsel to represent him in his criminal and divorce proceeding, both running congruently.

37) In June 2009, Chief Judge Tim Evans through reluctant Honorable Judge Edward Jordan in Cook County Domestic Relations Court, Divorce Court placed high and *unreasonable* financial liabilities upon shortly after hiring Attorney David Daudell as counsel, Frank Simmons began to be incur heavy court-ordered support payments to Michele.

38) Though Frank protested, Daudell and the Court, told him his high monthly support liabilities was lawful and that the Court makes the determination of what will be paid and not the amount shown in the 'Illinois State Child Support Calculator'.

39) Frank Simmons monthly net income was reduced to about $650.00 hundred dollars per month; including, also being ordered to withdraw monies from his 401K to pay Michele a number of times.

40) Also Frank was ordered to pay the bulk cost of fees from court-appointed Guardian-at-Litem's and alleged co-conspirator, attorney Lester Barclay. (see: $$$$$).

41) In comparison Michele Simmons, whose monthly net-income was at the time, approximately $11,000.00 thousand dollars per month had no court-ordered financial liability which is significantly greater than that of Frank Simmons.

42) The only court-order financial liability Michele incurred was that of the shared cost with

Within a few months into the divorce proceeding she presented the Court mortgage documents showing that she had been approved for a 50% debt write-off on their $550,000.00 dollar home and wanted Frank off the deed before she signed.

43) Clearly, the Domestic Court imposed liabilities are clearly *unreasonable.*' Frank's monthly support liabilities are 3-times higher than federal and state recommended guidelines for monthly child support and maintenance; thus, putting Mr. Simmons yearly take-home income well below federal and state poverty levels.

44) The question then becomes; if it is already a forgone conclusion that Michele is going to be awarded everything and whatever she wants in the divorce; why was it drawn-out the maximum Illinois term of two years, before the divorce was made final?

45) Child support and maintenance monthly cost concerns assessed during on-going divorce proceedings remain with the presiding judge hearing your case until the divorce is made final. This means, if Frank filed a motion for financial relief, the motion would be brought before the same judge who imposed the liability. Only when the divorce is made final can it be appealed.

46) U.S. Bankruptcy Court does not provide financial relief from lower domestic court rulings concerning child support and maintenance.

47) Moreover, though his net-income has been reduced below the poverty-line; because his salary exceeds what is considered low-income, he cannot qualify for even free-legal representation as from i.e.

48) Frank Simmons' divorce was drawn-out to reassure the watchful eyes of the conspirators, that he be bled dry, financially depleted, whereas, challenging them legally in anyway including just basic survival would be an insurmountable ordeal.

49) Clearly, Tim Evans used the divorce financial discovery to determine the best way to inflict financial hardship upon Frank Simmons to destroy him. To suppress Frank's ability to survive and to afford to acquire other legal counsel to contest the conspirators; which, further enhances the ability to conceal.

50) Clearly it is reasonable to consider that Frank's court-order domestic liability is being used as a tool to intentional suppress Frank Simmons Constitutional Rights and is clearly an act of "furtherance" of the conspiracy.

51) On July 10th, 2009 Michele and ASA Pavlus met in the presiding Judge Gary L. Brownfield's chambers for over an hour while the courtroom waited the Plaintiff's defense counsel, Attorney David Daudell who was over a 1 hour late for the start of the proceedings. Clearly there is a 'conflict of interest' in this is ex parte communication which fosters impropriety.

52) On July 10, 2009 Criminal Court Hearing- Bridgeview Courthouse, Attorney David Daudell and ASA Paul Pavlus told Frank Simmons that "it did not matter that he didn't do anything wrong, it is about protecting her (Judge Michele Simmons) job ('see: Judge Brownfield's Irregularities').

53) Frank Simmons (Plaintiff) informed co-conspirator, David Daudell that Michele had somehow illegally taken-over his personal AT&T Email Account and ask that he motion he quoted as 'Mail and Wire-Fraud'. Frank told Daudell that he could no longer send correspondence to that email address.

54) On record, at the July 10th, 2009 criminal hearing, Cook County Circuit Court Judge Gary L. Brownfield reprimand ASA Paul Pavlus on record for making the false allegations that Frank Simmons stomped in his minor son's chest and is quoted as follows:

55) "Mr. Simmons did not stomp in his son's chest. I had SON#1 step down (witness-stand) and demonstrate for the court what was done, and it certainly wasn't done the way you (ASA Pavlus) just did it, okay. If you're going to argue to me, don't try to change things, alter it, and make it different than what it was, because he described it and he showed me right there. He showed all of us!" (See: Hearing Judge Brownfield Irregularities). People v Simmons Hearing Transcript pg.113, Ln 6). Gary L. Brownfield:

56) After awarding Michele an 'Order of Protection' at the conclusion of the July 10th, 2009 Hearing, Judge Gary L. Brownfield told both ASA Paul Pavlus and David Daudell that he "saw and heard nothing that even came close to the level of domestic violence here" and told them "they both needed to come up with something else to charge him (Plaintiff) with because its sure not domestic violence!" as the Plaintiff stood at the witness table.

57) Judge Gary L. Brownfield retires.

58) After a number of questionable recusals from judges of less acquaintance with Michele, Chief Judge Timothy C. Evans, assigns Judge William J. Kunkle to preside over 'People v Frank Simmons" criminal proceedings on October 8th, 2009.

59) The same William J. Kunkle is a close friend of Michele. In the 1990's while under former Cook County State's Attorney Richard M. Daley, then department head, ASA Kunkle mentored and supervised both Michele Simmons and current State's Attorney, Anita Alvarez.

60) During their 20 year relationship, Mr. Simmons often accompanied Michele Simmons, to numerous CCSAO and ICCCC sponsored after-work, social gathering where Frank mingled with Anita Alvarez, William Kunkle, Tim Evans, and others were in attendance. Anita Alvarez and others attended the couple's wedding (§ 30-31).

61) Clearly it would have been *'reasonable'* for Judge William J. Kunkle to have recused himself in *'People v Simmons'* and/or Chief Judge Timothy C. Evans request that Kunkle step-aside in the interest to avoid impropriety as Chief Judge Evans did in the *'Koschman Case' (see: 'People v Frank Simmons & Koschman Case* Similarities') as reported by *Sun-Times Staff Reporters: Chris Fusco and Tim Novak on December 17, 2012 article* (Exhibit: I).

62) The Frank informs his defense counsel, David Daudell of the *'conflict of interest'* and that he immediately motion for a 'Substitution of Judge'. David Daudell refused to motion.

63) Judge William J. Kunkle, granted a number of continuation to await the findings of the Illinois Department of Children and Family Services (IDCFS or DCFS).

64) Defense counsel, David Daudell, recommends to the Plaintiff (Frank Simmons) not to return the calls and/or contact the Illinois Department of Children and Family Services (IDCFS or DCFS) to discuss nothing with them concerning the case.

65) Against the wishes of counsel, Mr. David Daudell (§ 85-87), Mr. Simmons concerned about his children, contacted IDCFS in October 2009 and spoke with IDCFS Administrator, Ms. Linda Everette Williams. Ms. Williams stated he should have received his IDCFS Letter back on September 23, 2009, stating the results of their findings. Ms. Williams advised that she would send him a copy of the original letter sent. The replacement copy of the original IDCFS was finally received by Frank Simmons on about February 18th, 2010; which was after the unsuccessful abstention January 27th, 2010 Criminal Trial Date.

66) Michele Simmons, knowing the findings of DCFS from the letter she had received that her allegations were "Unfounded"; concealed Frank Simmons' IDCFS Letter in the interest of concealing knowledge of its favorable findings to be used in court. Clearly this is 'obstruction of justice'. **(See: Michele Simmons – Mail & Wire Fraud)**

67) ASA Pavlus' lied when he told the court that he and the CCSAO had not received any results of IDCFS findings before Judge Kunkle on 10/08/09 and 11/03/09. Clearly this is perjury, and 'obstruction of justice'.

68) It is clearly *'reasonable'* to assume, that ASA Pavlus' had knowledge of IDCFS findings as early as 9/23/2009. Moreover, the false claim of CCSAO having not received DCFS's findings, when made to a former *'seasoned prosecutor'*, such as Judge Kunkle on October 8th and November 3rd, 2009, can only be considered a method by which ASA Pavlus' to inform co-conspirator, Judge Kunkle that IDCFS' findings did not favor Michele Simmons and also that Michele Simmons' relentless attempts to coerce IDCFS into changing their findings were unsuccessful. Every prosecutor and judge knows that DCFS Reports are provided within 4-months or less by Illinois State Law and not the 7 or 8-months as ASA was suggesting. Clearly this can be considered an effort to conceal evidence, commit perjury and/or obstruction of justice.

69) On January 26th, 2010; David Daudell called Frank to tell him not to attend his January 27th, 2010 trial because he was sick and that he had already spoken with Judge Kunkle and ASA Pavlus. Daudell, stated that Katie Cotter an attorney from his firm and ASA Pavlus would request a continuance from Kunkle, which he will grant.

70) Frank, untrusting of Daudell, appeared to court for his scheduled January 27th, 2010 criminal trial date much to the surprise of ASA Paul Pavlus and Judge Kunkle.

71) Attorney Katie Cotter was surprised to see Mr. Simmons because Attorney David Daudell had told her he (Frank Simmons), was sick and would not attend court. Clearly this is contrary to what Daudell stated on 1/16/10 and is clearly an attempt by Daudell to deceive Frank Simmons.

72) Moreover, prior to Frank Simmons appearing, ASA Paul Pavlus had informed Attorney Ms. Cotter that the prosecution was ready for trial in Frank Simmons absence. Clearly this is also contrary to what Daudell stated on 1/16/10 and is clearly another attempt by Daudell to deceive Frank Simmons.

As they all entered his court room; Judge William Kunkle also appeared noticeably surprised to see Frank Simmons in attendance. ASA Paul Pavlus told Judge Kunkle that the CCASO was not ready for trial.

73) Judge Kunkle, then replied, "I did not set this date for Trial".

■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

74) ASA Paul Pavlus replied in a corrective posture to Judge Kunkle saying "you did schedule this for trial; however, we are not ready because the children are not here. They needed to attend school this morning."

75) Judge Kunkle then replied in a corrective posture to ASA Pavlus, stating again that January 27th, 2010 was not scheduled for trial. Kunkle then stated that he would have the record corrected and grant a continuance to the prosecution. Judge Kunkle, then set a new trial date for 03/19/10.

■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

76) Before Mr. Simmons had arrived to court. This is clearly contrary to the agreement Attorney David Daudell stated on January 26, 2010, he made with ASA Paul Pavlus

77) Clearly, it is more than reasonable that on the January 27th, 2010 trial date, Judge Kunkle conspired unsuccessfully with co-conspirators, defense attorney David Daudell and ASA Paul Pavlus in an attempt to try 'People v. Frank Simmons' with Frank Simmons in abstention in order to secure an uncontested conviction (§ 63-70). Clearly this is attempt at 'obstruction of justice'; 'conspiracy to obstruct justice'; suppression and concealment of evidence.

78) On about February 18th, 2010, Frank received his official copy of the IDCFS Letter detailing their findings, which was originally sent to Michele Simmons back in September 23rd, 2009.

79) On about February 23rd, 2010 Frank met Attorney Daudell at divorce court and there advised him to see the letter he received from IDCFS.

80) Daudell stated that the findings in IDCFS' letter meant nothing.

81) Daudell then requested Frank sign a release form for IDCFS to release their findings to him.

82) However, each time Frank signed a release form with his dated signature; Daudell threw the signed form away as trash.

83) On about February 23rd, 2010 Daudell swore to Frank Simmons in person that he would subpoena IDCFS to testify at his upcoming March 19th, 2010 criminal trial.

84) Clearly David Daudell seeks to sabotage Frank Simmons' criminal defense.

85) On about March 3rd, 2010, finally received IDCFS' 40-plus page report as a PDF-file, emailed from ASA Palvus.

86) Pavlus also lied when he stated that there was nothing of value in the IDCFS' report to help Frank Simmons' case as did Daudell.

87) Attorney Lester Barclay called Frank Simmons prior to trial on the morning of the March 19th, 2010.

88) Attorney Lester Barclay told Frank Simmons that he had definitive knowledge that the March 19th, 2010 criminal trial was fixed and is just a set-up; that Mr. Simmons just should plead guilty (§ 74-76) because he is not going to win.

89) The extent of Mr. Barclay's involvement in the conspiracy and/or role is yet to be determined, however, having knowledge of a crime and pro-actively solicit other(s) to be a part of it; constitutes aiding and abetting the crime of conspiracy.

90) Daudell called right after Lester Barclay's call and told Frank Simmons, when asked that he did not subpoena and that he lied.

91) Again, clearly David Daudell seeks to sabotage Frank Simmons' criminal defense.

92) At the March 19th, 2010 criminal bench trial, *'People v Frankie Simmons'-'09-6-007235,'* presiding Judge William J. Kunkle, threatened and forbid Frank Simmons from mentioning IDCFS in anyway less otherwise be held in contempt of court and thrown in jail.

93) Judge Kunkle when on to instruct defense counsel, David Daudell and ASA Pavlus that in no way could anyone mention or refer to IDCFS' findings or report during the course of the criminal trial.

94) Both David Daudell and ASA Pavlus agreed.

95) Judge Kunkle, in his closing remarks before rendering his verdict of guilty, stated:

> "that since there was no mention of IDCFS during the trial and in the absence of IDCFS Testimony, findings and reports at trial, I have no choice but to go with the recommendations of the Cook County State's Attorney Office and find the Defendant (Petitioner Frank Simmons) guilty as charged of Domestic Battery".

96) It is clear that the goal of the conspirators was to ensure that the DCFS report never appear in court on court record to seem as if it never existed.

97) Clearly the conspirators in their effort to suppress and conceal IDCFS' evidence, engaged in the provision of false evidence; evidence tampering; perjury; obstruction of justice; conspiracy to obstruct justice.

98) About April 15th, 2010, Frank Simmons filed an appeal of Kunkle's criminal verdict.

99) About April 22nd, the Cook County Circuit Court rejected Frank Simmons' hardship request for a free trial transcript

100) Court reported stated that it would require at least a $500.00 deposit before she could start on the transcript.

101) Franks Simmons did not have $500.00 due to the relentless heavy financial burden levied by Tim Evans in divorce domestic court.

102) Resulting from the act of *'furtherance'*, At the Child Custody Trial, *'Michele M. Simmons vs. Frank Simmons - 09-D-005497'*, on March 28th and 29th 2011, in Domestic Relations Court, before the Honorable Judge Edward Jordan;

103) The Honorable Judge Edward Jordan ruled that IDCFS Caseworker Clemmons testimony given was *"unimpeachable evidence"*.

104) The Honorable Judge Edward Jordan also ruled *"The IDCFS' People v. Simmons: SCR #1868829-A Report with the medical report, and photos taken on the morning of June 7th, 2009 by Mr. Simmons of his son, SON#1, showing no signs of abuse; were all unimpeachable pieces of evidence."*

105) On August 1st, 2012, the Honorable Judge Raul Vega, presiding over Divorce Discovery Hearing for *college contributions and reimbursements for summer camp*, made the following statements, on record, concerning Mr. Simmons' court imposed child support liability ((§ 17): *'Furtherance'*).:

*"The monthly child support payments accessed Mr. Simmons are too high! This is clearly unreasonable! Clearly your divorce should have been handled out of Cook County District. You (Ms. Michele Simmons) are an unreasonable person! I advise that you withdraw your petition for college contributions and reimbursements for summer camp in light of Mr. Simmons bankruptcy filing."*

106) On March 5th, 2015, Frank Simmons filed attached Motion #09600723501 alleging conspiracy in the and requesting the appointment of a Special Prosecutor and an Appellate Defender in the Criminal Division of Bridgeview Courthouse with a hearing date of March 23rd, 2015.

107) The March 23rd, 2015 hearing was presided over by the Honorable Judge Stephen J. Connolly, Cook County Circuit Court Judge at the Bridgeview Courthouse.

108) On March 23rd, 2015 CCSAO knowingly and falsely stated that Judge Havis (former CCSAO prosecutor) presided over the Plaintiff's criminal trial and that the motion was already being heard by Judge Havis and requested Judge Stephen J. Connolly to move the case to Judge Havis.

109) The Plaintiff, Frank Simmons challenged the CCSAO's claim stating Motion #09600723501 was recently filed on March 5th, 2015 and that the motion had never been before Judge Havis. Also stated that Havis never presided over his criminal trial, that William J. Kunkle was the only judge who presided over his trial. The CCSAO offered no rebuttal in response to the Plaintiff.

110) Therefore, the Honorable Judge Stephen J. Connolly advised the CCSAO that he would be hearing the Plaintiff, Frank Simmons' motion and called a recess to review his Motion #09600723501.

111) After review of Motion #09600723501, Judge Stephen J. Connolly stated for the record that the allegations of conspiracy made in the motion had merit and were serious and recommend that the CCSAO provide a written response before his ruling on the motion.

112) In response, the CCSAO stated that they did not feel the motion was relevant.

113) In response, the Judge Connolly stated that he strongly recommend the CCSAO provide a written response before he ruled on the motion; but made it clear that he would not have a problem giving a ruling at that moment should the CCSAO continue the stand that a written response to Motion #09600723501 by their office to the motion was not necessary.

114) In response, the CCSAO stated that they would prepare a written response.

115) The Plaintiff, Frank Simmons' requested of the Court to give him a ruling at the time granting financial relief from his Cook County Domestic Court ordered high monthly support obligations and the appoint of a State Applets Defender.

116) However, the Honorable Judge Stephen J. Connolly advised Frank Simmons that he could not give a ruling on the matter at the time until he had heard the CCSAO's written response and to wait, to hang on a little longer.

117) Judge Connolly set a date of April 28, 2015 to hear the CCSAO's written response.

118) However, to the surprise of the Plaintiff, Frank Simmons in another braise act of impropriety and conspiracy to obstruct justice on April 28, 2015 the Illinois Cook County Circuit replaced the Honorable Judge Connolly with former CCSAO Prosecutor and current Associate Cook County Circuit Court Judge Donald R. Havis. The same judge the CCSAO wanted and stated on March 23rd, 2015 to hear Motion #09600723501.

119) The television documentary series 'Fault Lines' by Aljazeera America how those lacking money and impoverished are the victims of America's Criminal Justice System in the documentary 'Chasing Bail'

120) Havis, in his first few words, stated that Motion #09600723501 was no good because it failed to mention the Olympia Fields Police Department as a defendant and that the statute of limitations had expired years ago.. When asked which allegation had expired, he refuse to answer and would never mention the word abuse claims to be a major flaw.

121) Clearly this makes no sense whatsoever, considering the Plaintiff has ever right determine who he will hold liable for civil damages and who he considers a witness on his behalf. Surely this is no viable reason to throughout Motion #09600723501 and it not be heard.

122) Judge Havis, when asked by the Plaintiff if he was a former CCSAO Prosecutor, Havis immediately replied: "I see you did your home work! I know where you are going with this! I have never worked for Anita Alvarez! She has never been my boss! I have never worked underneath Anita Alvarez!" Clearly answering the question with a simple "Yes" would have sufficient!

123) It would be 'reasonable' to assume from Judge Havis' comment "I know where you are going with this!" is his personal acknowledgement of what could be considered a 'conflict of interest' considering Anita Alvarez and the CCSAO has 'interest' in the outcome of the proceedings.

124) Judge Havis' carefully crafted words clearly implied that there is no 'conflict of interest' and he has never had a working relationship with Ms. Alvarez at the CCSAO.

125) Judge Havis intentionally failed to say that Anita Alvarez and he worked together as former colleagues at the CCSAO as did Michele Simmons. Therefore it is '*reasonable*' to assume, of his own accord, Havis willfully sought to deceive the Plaintiff, Frank Simmons through his implied meaning, can be considered '*perjury*'.

126) Judge Havis denied Motion #09600723501 in its entirety, and in the ruling gave his reason that the statute of limitations on the March 19th, 2010 domestic violence conviction was over years ago and if he did not like the ruling he could take him up on appeal.

127) Motion #09600723501 is unrelated and clearly about civil rights violations, mail and wire fraud, conspiracy, obstruction of justice and other crimes; which are totally different.

128) Therefore it is reasonable to assume Judge Havis' April 28, 2015 ruling was a criminal act of 'obstruction of justice' with the hope to delay Motion #09600723501 and exceed the three year Illinois Statue of Limitations for Conspiracy.

129) Each alleged criminal act committed on April 28th, 2015 by Judge Havis, including but not limited to, perjury, conspiracy, obstruction of justice are considered additional acts in '*furtherance of the conspiracy*'; therefore the state of limitations are renewed an additional three years as per Illinois State Law and within five years per federal guidelines.

130) Judge Havis also '*unreasonably*' denied Plaintiff, Franks Simmons' '*reasonable*' request to have Motion #09600723501 heard out of district to avoid the ICCCC's and CCSAO's '*conflict of interest*' in the proceeding.

131) Judge Havis also '*unreasonably*' denied Plaintiff, Franks Simmons' '*reasonable*' request to be declared 'indigent' so that he may qualify for legal assistance; thus, continuing to deny him equal protection under the law.

132) Again Chief Judge Timothy C. Evans creates the same '*conflict of interest*' as he did with Judge Kunkle in '*People v Simmons*' (§ 28-29, 30-31). Clearly it would have been '*reasonable*' for Judge Havis to have recused himself and/or Chief Judge Timothy C. Evans request that Havis step-aside in the interest of avoiding impropriety (§ 77-81 as Chief Judge Evans did in the '*Koschman Case*' as reported by *Sun-Times Staff Reporters: Chris Fusco and Tim Novak on December 17, 2012 article* (Exhibit: I). Therefore, Chief Judge Timothy C. Evans and the ICCCC have **"interest"** in the investigation and outcome of these proceedings.

133) On May 21st, 2015, Plaintiff, frank Simmons filed an Emergency Motion for 'Cancellation of Child Support' in Illinois Cook County Domestic Court to be heard by the Honorable Judge Raul Vega whom had already reviewed financial discovery in the divorce on August 1, 2012, (§ 17).

134) The Emergency Motion was moved to the call of Judge Mary S. Trew whom had no participation throughout their many divorce proceeding though Judge Raul Vega was present and available that day.

135) Before hearing the motion, Judge Trew told the Plaintiff that the she was not sure if she had heard any of his domestic cases; but she must have since his motion was placed on her call and not Judge Raul Vega's call.

136) Judge Mary S. Trew took a recess after receiving the motion; later returned to the bench setting a date of August 3rd, 2015 for a hearing on the matter. It is highly irregular in Cook County Domestic Court that a simple hearing for adjustment of child support be set over two months out. Normally, these proceedings are concluded within thirty (30) days or less.

137) August 1st, 2012 was clearly stated theoretically as the last date of furtherance mentioned in Motion #09600723501, which occurred before the Honorable Judge Raul Vega on August 1st, 2012, (§ 17) almost three years ago.

138) Co-conspirator Chief Judge Timothy Evans and other co-conspirators are well aware of Illinois' 3 year statute of limitations for conspiracy and intentionally set the motion's court date after its expiration.

139) Tim Evans, who is listed as a co-conspirator in Motion #09600723501 had every chance at the April 28th, 2015 criminal and May 21st, 2015 domestic court proceedings to vindicate himself and distance himself from the alleged conspiracy, yet he failed.

140) The actions of the Cook County Circuit Courts from the start 6 years ago, to the present, has sought by every means at its disposal to destroy Frank Simmons in an effort to suppress the criminal wrongdoings of one of their own, Michele Simmons.

141) This clearly demonstrates the abuse received by Frank Simmons from the courts was no accident; but that it was personally managed high-up within the judiciary and CCSAO. This motion demonstrates that there are no limits to the extent they will go to perpetrate a crime. It does not matter how many innocent victims they hurt or who they are willing to use to achieve their criminal goals.

142) This Court has seen clearly the allegations of violence made by Cook County Circuit Court Associate Judge Michele M. Simmons of SON#1 by Frank Simmons on June 7th, 2009 were "False", "Unfounded", and "Malicious" as per IDCFS' findings in IDCFS' Report SCR #1868829-A (Exhibit A & B) (§ 104); which, per Illinois State Law, is a crime to report false claims of abuse pursuant to Rules 300, Section 300.30. We see that Michele Simmons was unsuccessful in her attempts to coerce IDCFS into changing their findings (§ 104).

143) This Court has seen that it is *reasonable* to assume Michele Simmons and Ursula Gulley coerced minor SON#1 to commit *'perjury'* in addition to, but not limited to, *'conspiracy to obstruct justice'* and *'obstruct of justice' false evidence; evidence tampering; and suppression and concealment of evidence* (Exhibit E).

144) This Court has seen that it is *reasonable* to assume Michele Simmons, with the assistance of Ursula Gulley, whom is employed in the AT&T Business Office, fraudulently commandeered Frank Simmons personal AT&T Email Account and switched it into Michele Simmons name; thus, locking him out of his own email; which constitutes Federal Mail & Wire Fraud. Therefore, communications giant, AT&T has interest in the outcome of these proceeding.

145) This Court has seen that it is *reasonable* to assume that co-conspirator, Attorney David Daudell continued to use this commandeered account to communicate with co-conspirator Michele Simmons despite being provided a new email address and informed by Frank Simmons for months that his email account had been fraudulently switched Michele Simmons (Exhibit K).

146) This Court has seen that it is *reasonable* to assume that Attorney Julie Garmon knowingly conspired with Michele Simmons and Attorney David Daudell to suppress and conceal evidence, IDCFS's findings, and Mail & Wire Fraud.

147) This Court has seen that it is more than *reasonable* that alleged conspirator, Chief Judge Timothy C. Evans conspired with Judge Michele Simmons, CCSA Anita Alvarez (§ 30, 45-49), defense counsel Attorney David Daudell (§ 77-81), and others (*now known as: conspirator(s) and/or co-conspirator(s)*); in order to shield Michele Simmons, his friend and subordinate judge (§ 51) from possible prosecution and to avoid, rather than face the possibility of negative backlash resulting from Michele Simmons, a Cook County Associate Judge, abusing her position of trust and authority to perpetrate a criminal act and affect her divorce.

148) This Court has seen that it is reasonable to assume from the huge body of exonerating evidence provided herein, that co-conspirator, Attorney David Daudell assisted greatly in the false conviction of

149) Frank Simmons.. Attorney David Daudell stole, lied, and deceived Frank Simmons, in addition to, conspiring to suppress and conceal medical and IDCFS's Reports and other exonerating evidence from court records with ASA Paul Pavlus, Judge William J Kunkle, and others (§ CCSAO: 45-49; Evans: § 56-59; Kunkle: § 31, 51, 62-73; Carr: 13-14, 53, 55; Brownfield: § 99-101; Daudell: § 77-81; Michele Simmons: § 21-25, 99-101). To avoid a judicial conflict of interest (§ 28-29, 30-31),

150) This Court has seen that it would have been *reasonable'* for Judge William J. Kunkle to have recused himself in *'People v Simmons'* and/or Chief Judge Timothy C. Evans request that Kunkle step-aside in the interest of avoiding impropriety (§ 77-81  as Chief Judge Evans did in the *'Koschman Case'* as reported by *Sun-Times Staff Reporters: Chris Fusco and Tim Novak* on December 17, 2012 article (Exhibit: I).

151) This Court has seen that it is *'reasonable'* to assume that the suppression and concealment of all medical and IDCFS's Reports by the conspirators, along with gaining a criminal conviction, would give substance to Michele Simmons' fabricated allegations; but, also shield the ICCCC from possible judicial scandal and misconduct (§ 51-58). Moreover, denying the existence of IDCFS's findings gives the false impression that IDCFS was never involved in *'People v Frank Simmons*, which is even more *'unreasonable'* assume when it is known, that by Illinois State Law, the IDCFS is required to investigate all allegations of abuse involving a minor.

152) This Court has seen that it is *'reasonable'* to assume on the January 27th, 2010 trial date that Cook County Criminal Court Associate Judge William J. Kunkle with co-conspirators, defense attorney David Daudell and ASA Paul Pavlus conspired unsuccessfully in an attempt to try 'People v. Frank Simmons' with Frank in abstention in order to secure an uncontested conviction (§ 63-70).

153) This court will see that it is *'reasonable'* to assume that on the March 19th, 2010 trial date, Judge Kunkle's pre-trial instructions to the defense and the court was in the interest of *'concealment and suppression'* of evidence; which, he conspired with co-conspirators, defense attorney David Daudell, ASA Paul Pavlus, and others to achieve this *'obstruction of justice'* (§ 71-73).

154) This Court has seen that it is *'reasonable'* to assume that  the March 19th, 2010 pre-trial personal unsolicited comments made by co-conspirator,  Guardian-at-Litem  Attorney Lester Barclay to the Plaintiffs, demonstrated expressed, definitive knowledge of a conspiracy and the extent of involvement of others, including possibly his own involvement (§ 74-76) to falsely convict Frank Simmons for domestic battery.  The extent of Mr. Barclay's involvement in the conspiracy and/or role is yet to be determined, however, having knowledge of a crime and the solicitation of other(s) to go along with it and/or look the other way, constitutes aiding and abetting the crime of conspiracy.

20

155) This Court has seen that it is *'reasonable'* to assume that co-conspirator, Cook county Domestic Court Associate Judge John Thomas Carr conspired with co-conspirator, Chief Judge Timothy C. Evans and/or others in a premeditated criminal act of suppression by levying high *'unreasonable'* domestic financial liability upon Frank Simmons to silence him in both criminal and domestic court proceedings; thus depriving Frank Simmons 'equal protection under the law' throughout the entire duration of his criminal trial proceedings and after from appeal, in an act of, but, not limited to, *'conspiracy to obstruct justice'* (§ 13-14, 53, 55).

156) This Court has seen that it is *'reasonable'* to assume that the Honorable Judge Edward Jordan and the Honorable Judge Raul Vega were truly appalled by Judge Michele Simmons' lack of judicial ethics (§ 77-78).

157) This Court has seen that it is *'reasonable'* to assume that the false conviction of Mr. Simmons was influenced by Michele Simmons' employee relationship with the Illinois Cook County Circuit Courts (ICCCC) as a Illinois Cook County Circuit Court Criminal Judge. It is *'reasonable'* to assume that had Michele Simmons not been an Illinois Cook County Circuit Court Judge, the (ICCCC) would have thrown-out the CCSAO charges against Mr. Simmons for lack of evidence. Moreover, Mr. Simmons would have been treated fairly in his divorce from Michele Simmons. The handling of these matters by the Illinois Cook County Circuit Courts (ICCCC) raises questions that cry out for objective, unbiased investigation, including: (a) whether ICCCC acted to restrict, impede, and/or conceal supporting evidence of Mr. Simmons' innocence from court record. (b) whether the ICCCC, Illinois Cook County Chief Judge, Timothy C. Evans, Judge William J Kunkle, Judge John Thomas Carr, Judge Michele Simmons and/or other employees within the Illinois Cook County Circuit Courts (ICCCC) conspired to cover-up, suppress, and/or effect a means directly and/or indirectly to diminish and/or deprive Mr. Simmons' of his civil rights and liberties afforded by US Constitution. , i.e. inability to defend both criminally and/or domestically.

158) This Court has seen the protest around the country, we see citizens of all walks of life demanding fairness and justice of our criminal justice system. They clearly see an imbalance in our justice system that favors some and not others; a system that unfairly targets, harasses, brutalizes, criminalizes, and even kills. Some attribute this unbalance to the division between the haves and the have not's.

159) Our nation's criminal justice has given huge latitude to our police, judiciary, and prosecutors before they can be truly called for their abuses. Which is not intended in The Constitution.

160) U.S. President Barack Obama and Americans all over our country our speaking out against our criminal justice system, how it tends to disproportionately and adversely target this county's people of color. How the System brutalizes and saddles people of color with crimes ruining their opportunity for employment destroying their lives and the lives of their families and communities.

161) As in the '*Koschman Case*', '*People v Frank Simmons*' both have stark similarities.

162) '*Koschman Case*' alleges the CCSA Anita Alvarez; the CCSAO; and Chicago Police Department conspired and concealed evidence to commit '*obstruction of justice*' to protect one in their inner-circle.

163) '*People v Frank Simmons*' alleges the CCSA Anita Alvarez; the CCSAO; Chief Judge Timothy Evans; and the ICCCC conspired and concealed evidence to commit '*obstruction of justice*'.

164) '*People v Frank Simmons*' reveals that it's just not the usual suspects, the police and prosecutors involved in this persecution; but that the judiciary is also a co-conspirator. As we look out over our great country, in our metropolitan communities we see the devastating effects from years of their handy work.

165) The African-American Community and other communities are saying our males matter, our families matter, our lives matter, our fathers, mothers, sons, and daughters matter! Stop criminalizing us into hopelessness and killing our innocent!

166) This Court has seen clearly the '*coercion*' of and destruction of the innocent of Frank Simmons minor child, SON#1 to commit '*perjury*' against the father he loves, is an unconscionable. And, once the conspirators' felt they got what they needed from him they minor SON#1 aside to personally bare alone the burden of his small role in the conspiracy. Wondering what he is going to say to his father when he sees him. On August 10th, 2009, SON#1 told the IDCFS Caseworker "that he loves his father and that he wants to see him.....that he does not know what he will say to his father." Frank Simmons can feel the pain and confusion in SON#1's statement when he read the IDCFS Report.

167) This is a real senseless tragedy! Tim Evans, Anita Alvarez, and the other conspirators obviously do not care about SON#1's state of mind. He is not their child; but, SON#1 is Michele Simmons' child. This is the real Michele Simmons, the conniving, extremely selfish, and the abusive person she is; one who does not care about who she hurts, one who will stop at nothing, even if it means using her own child as a pawn to affect her own personal resentments. This abuse is also evident from her history of actions (§ 21-25), including on the morning of June 7th, 2009 (§ 91-95) and the physical assault upon Mr. Simmons witnessed by Olympia Fields Police (§ 22; 96-98).

168) When we raise our children we read to them fairy tales saying 'good' will triumph over 'evil'. We tell them to have faith in God and he will give us the strength to survive our troubles.....to be honest and fair. However, thus far, 'People v Frank Simmons' has taught the wrong message to minor SON#1.

169) There needs to be a rewrite of the script in 'People v Frank Simmons' with the correct re-write ending with Michele and her co-conspirators being brought to justice and made to pay for their malicious crimes. Despite all the Conspirators efforts to destroy Frank Simmons, with the help of God, he keeps fighting for justice and his children.

170) And his fight is an example to others that when you are wronged, you don't have to result to violence for resolution. That one can get our legal system to work fairly and that all is not hopeless or lost... This motion says that you can there is a legal way to fight

171) This is the real tragedy and is criminal! Tim Evans, Anita Alvarez, and the other conspirators obviously do not care about SON#1's state of mind, he is not their child; but SON#1 is Michele Simmons' child. This is the real Michele Simmons, the conniving, extremely selfish, and the abusive person she is; one who does not care about who she hurts, one who will stop at nothing, even if it means using her own child as a pawn to affect her own personal resentments. This abuse is also evident from her history of actions (§ 21-25), including on the morning of June 7th, 2009 (§ 91-95) and the physical assault upon Mr. Simmons witnessed by Olympia Fields Police (§ 22, 96-98).

172) The Plaintiff argues, that on June 7th, 2009, Michele Simmons, knowingly and vindictively conspired with, former and past colleagues and others personally knew her physical abuse allegations to be false; but, willfully conspired with Michele Simmons and others in the criminal justice system to falsely convict, humiliate, and destroy an innocent man, Frank Simmons, father of their three children.

173) When those bestowed the honor and responsibility of ensuring fairness in our criminal justice system, to protect and defend its citizens, has a willingness to perpetrate needlessly crimes to destroy the innocence of its citizens; then there is no system of structure for justice; only, a loose cannon driven by the selfish desires of those within the inner circle and not the voice of the people.

174) When those bestowed this honor needlessly attack and taint the innocence of our minor children by coercing them against their will, telling them it's ok to commit the criminal act of perjury against a loved one; then We The People say this loose cannon has demonstrated that it is out of control and has no conscience of the carnage it leaves behind and how it has damaged it's young victims. How it has broken and twisted relationships leaving one to draw upon memories past with the prayer these will be strong

23

enough to mend again, all the expectations loss, to heal in the uncertainty that one can salvage a future with God's help.



**Plaintiff Signature**

Frank L. Simmons
**Plaintiff Printed Name**
Frank L. Simmons
925 W. Huron Street,  Suite 211
Chicago, IL. 60642
Phn: (312) 919-9320
Email:  frank.3332@hotmail.com

# IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CRIMINAL DIVISION

IN RE APPOINTMENT OF SPECIAL PROSECUTOR

No: 09600723501

)
) No : |        Misc. _____
)
) The Hon | Donald R. Havis
)
)

## NOTICE OF MOTION

Anita M. Alvarez, Cook County State's Attorney
Anita M. Alvarez
Paul Pavlus, Assistant State's Attorney
Paul Pavlus
50 W. Washington St. Suite 500
Chicago, Illinois 60602

Timothy C. Evans, Chief Judge - Circuit Court of Cook County
Timothy C. Evans
Paul Pavlus - Circuit Court Judge of Cook County
Paul Pavlus
Michele M. Pitman - Circuit Court Judge of Cook County
Michele M. Pitman
William J. Kunkle - Circuit Court Judge of Cook County
William J. Kunkle
John Thomas Carr - Circuit Court Judge of Cook County
John Thomas Carr
Circuit Court of Cook County
50 West Washington Street, Room 2600
Richard J. Daley Center
Chicago, IL 60602

David W. Daudell – Attorney, David Daudell Law Firm
David W. Daudell
211 W. Wacker Dr.l
Suite.#500
Chicago, IL. 60606

Julie A. Garmon, Esq
Julie A. Garmon
3330 181st Place, Suite 103
Lansing, IL. 60438

Lester L. Barclay – Barclay, Dixon & Smith, P.C.
Lester L. Barclay
39 S. LaSalle St., Suite 900
Chicago, IL. 60603

Ursula Gulley
216 Shea Dr.
Flossmorr, IL. 60422

PLEASE TAKE NOTICE that on March 23, 2015 at 9:00AM (am) pm., I will appear before the Honorable Judge Donald R. Havis presiding in courtroom 102, in the Bridgeview Courthouse, Bridgeview, IL, 60453 and present the attached:

## IN RE APPOINTMENT OF SPECIAL PROSECUTOR

Pro Se Signature: _____
925 W. Huron Street
Suite 211
Chicago, Illinois 60642
(312) 919-9320

## CERTIFICATE AND AFFIDAVIT OF DELIVERY (PERSONAL OR BY MAIL)

The undersigned hereby certifies under penalties of perjury provided by law pursuant to 735 ILCS/1-109, that the above notice and attached pleading were [X] placed in the U.S. mail at 925 W. Huron, postage prepaid, and/or by personally, as stated below on March 16 2015.

_____              Frank Simmons
(Signature)                          (Print Name)

1

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CRIMINAL DIVISION

IN RE APPOINTMENT OF SPECIAL PROSECUTOR

No. 09600235 Misc. _____

The Hon. Donald R. Havis

---

### PETITION FOR APPOINTMENT OF A SPECIAL PROSECUTOR
### PETITION FOR APPOINTMENT OF A STATE APPELLATE DEFENDER
### IN THE MATTER OF THE FALSE CRIMINAL CONVICTION OF FRANK SIMMONS

Frank L. Simmons, Petitioner, respectfully request that this Court pursuant to 55 ILCS 5/3-9008, appoint a special prosecutor to investigate allegations of domestic violence, coercion; coercion of a minor to commit perjury; false evidence; evidence tampering; perjury; obstruction of justice; conspiracy to obstruct justice; suppression and concealment of evidence including, but not limited to, financial abuse; financial abuse in the obstruction of justice; assault; various Federal and State mail / cyber fraud violations; and civil rights violations by any individual and/or person including, but not limited to, in the employment of and/or employee of the Illinois Cook County Circuit Court (ICCCC), Cook County State's Attorney Office (CCSAO) and/or individual(s) David William Daudell (David Daudell Law Firm: former criminal and divorce legal counsel to the Petitioner); Illinois Cook County Chief Judge, Timothy C. Evans; Illinois Cook County State's Attorney, Anita Alvarez; Cook County Assistance State's Attorney (ASA), Paul Pavlus; Cook County Circuit Court Criminal Associate Judge, Michele M. Pitman (formerly: Michelle R. McDowell-Simmons and/or Michele Simmons); Cook County Circuit Court Criminal Associate Judge, William J. Kunkle; Cook County Circuit Court Domestic Relations Associate Judge John Thomas Carr; Guardian-At-Litem (GAL), Attorney Lester Barclay; Attorney Julie A. Garmon, Esq.; and Ursula Gulley (an mother of Michele Simmons and AT&T Employee) in connection with the false conviction of domestic battery in 'People v Frank Simmons - 09-6-007235'; and conspiracy in divorce case 'Michele M. Simmons vs. Frank Simmons - 09-D-005497'.

In addition, Frank L. Simmons, Petitioner, respectfully request that this Court pursuant to State Appellate Defender Act (725 Illinois Compiled Statutes, Act 105) appoint a State Appellate Defender to represent Petitioners on both criminal and domestic appeals (§ 53, 13, 55).

1

**In Support of Petitioners:**

1.   On the morning of Sunday, June 7th, 2009 at approximately 9:30AM, at the home of Frank Simmons and his former wife of seventeen (17) years, Cook County Circuit Court Associate Judge Michele M. Simmons, mother of his three (3) children, 15-year old DAUGHTER#1; 13-year old SON#1, and 9-year old SON#2, in a premeditated criminal act of abuse (§ 21-25; 90-94) made false allegations of Domestic Battery of SON#1 by Frank Simmons. The couple was on the verge of divorce.  Four days later, Michele Simmons officially filed for divorce.  However, after a thorough four month investigation, the Illinois Department of Children and Family Services (IDCFS) concluded, on September 23rd, 2009, in their published forty-page IDCFS' Report SCR #1868829-A (Exhibit A) (§ 104), that Judge Michele Simmons' allegations of physical abuse by Frank Simmons of SON#1 were "False", "Unfounded", and "Malicious" (Exhibit B) (§ 104); which, per Illinois State Law, is a crime to report false claims of abuse pursuant to Rules 300, Section 300.30.

2.   The Illinois Department of Children and Family Services (IDCFS) forwarded IDCFS' Report SCR #1868829-A, to the Illinois Cook County State's Attorney Office (CCSAO) stating that conspirator Michele Simmons' allegations of physical abuse by Frank Simmons of SON#1 were "False", "Unfounded", and "Malicious" (Exhibit B) (§ 104).   The IDCFS recommended that the CCSAO drop their domestic battery charges against Frank Simmons and seek to prosecute conspirator Judge Michele Simmons for "Malicious", false reporting of abuse pursuant to Rules 300, Section 300.30 (Exhibit B).  Though received in October 2009, the CCSAO continued to deny having knowledge of and having received IDCFS' Report SCR #1868829-A. Moreover, alleged co-conspirator Illinois Cook County State's Attorney (CCSA) Anita Alvarez, former CCSAO colleague of Michele Simmons and long-time personal friend who actually attended the couple's wedding (§ 28-29), personally vowed (Exhibit G) that she would be handling the 'People v. Frank Simmons' criminal case and continued to endorse domestic battery charges against Frank Simmons. Anita Alvarez assigned allege co-conspirator, CCSAO Department Head, Assistant State's Attorney (ASA) Paul Pavlus from the Rolling Meadows Court House to the Bridgeview, Court House to prosecute the criminal case (§ 45-49).  This Court will see that it is *reasonable* to assume that co-conspirators CCSA Anita Alvarez, ASA Paul Pavlus, and/or the CCSAO committed, including, but not limited to, *prosecutorial misconduct, coercion, coercion of a minor, coercion of a minor to commit perjury, perjury, 'conspiracy to obstruct justice', 'obstruct of justice', false evidence; evidence tampering; and suppression and concealment of evidence* (§ CCSAO: 45-49) (see: Hearing Transcript pg. 102 ln. 16; pg. 103 ln. 1 -10). Therefore, including, but not limited to, CCSA Anita Alvarez; ASA Paul Pavlus; the CCSAO; Attorney David Daudell; and Associate Judge Michele M. Pitman (formally: Michele McDowell Simmons) has *"interest"* in the investigation and outcome of the proceeding *See 55 ILCS 5/3-9008.*

2

Despite personal assurances to the Petitioners by alleged co-conspirator, Illinois Cook County Circuit Court (ICCCC) Chief Judge Timothy C. Evans, on June 8th, 2009 (§ 50) to avoid impropriety and ensured fairness; in both exclusively closed-courtroom criminal and divorce proceedings running congruently, *'People v Frank Simmons - 09-6-007235'* and *'Michele M. Simmons vs. Frank Simmons - 09-D-005497'* respectively, were each overwhelmed with, but not limited to, alleged, *'judicial misconduct, impropriety, conflicts of interest, ex parte communications, concealment and suppression of evidence, evidence tampering, conspiracy, conspiracy to obstruct justice, and obstruction of justice* (Evans: §s 56-59; Kunkle: §s 31, 51, 62-73; Carr: 13-14, 53, 55; Brownfield: § 99-101).

This Court will see also that it is *'reasonable'* to assume that Frank Simmons' defense counsel, co-conspirator, Attorney David Daudell conspired with the CCSAO, ICCCC and others to commit obstruction of justice (§ 77-81). On March 19th, 2010, alleged co-conspirator, Cook County Circuit Court Associate Judge William J. Kunkle, whom was also a former CCSAO colleague of Michele Simmons and Anita Alvarez and are also long-time personal friends (§ 28-35); willfully conspired with others, in a bench trial, to wrongfully convict Frank Simmons, an innocent African American male of domestic battery (§ 19). The Petitioners allege that co-conspirator, Chief Judge Timothy C. Evans and/or others knowingly assigned co-conspirator, Associate Judge William J. Kunkle to preside *'People vs. Frank Simmons'*, intentionally; thus, creating a serious *'conflict of interest'* (§ 62, 51) in the act of, but, not limited to, *'conspiracy to obstruct justice'*. The Petitioners allege also that co-conspirator, Chief Judge Timothy C. Evans and/or others conspired with, Cook county Domestic Court Associate Judge John Thomas Carr whom in an intentional act of suppression, levied *'unreasonable'* domestic financial liability upon Mr. Simmons to deprive him 'equal protection under the law' throughout the extent of his criminal trial proceedings and after from appeal, in an act of, but, not limited to, *'conspiracy to obstruct justice'* (§ 13-14, 53, 55). This court will see, that the conspirators fabricate allegations of abuse at sheer will with little regard for the consequences of the crimes they commit which includes; but is not limited to, *coercion, coercion of a minor, coercion of a minor to commit perjury, perjury, 'conspiracy to obstruct justice', 'obstruct of justice', false evidence; evidence tampering; and suppression and concealment of evidence* (§ CCSAO: 45-49; Evans: § 56-59; Kunkle: § 31, 51, 62-73; Carr: 13-14, 53, 55; Brownfield: § 99-101; Daudell: § 77-81; Michele Simmons: § 21-25, 99-101). *Conspirator can be referred to as conspirator (singular), conspirator(s) and/or co-conspirator(s).*

    3.   The Petitioners allege that Chief Judge Timothy C. Evans conspired with Judge Michele Simmons, CCSA Anita Alvarez, defense counsel Attorney David Daudell, and others (*now known as: conspirator(s) and/or co-conspirator(s)*); in order to shield Michele Simmons, his friend and subordinate judge from possible prosecution and avoid, rather than face the possibility of negative backlash resulting from a Cook County Associate Judge abusing her position of trust and authority to commit a criminal act and affect her divorce. This court will see that it is *'reasonable'* to assume that since conspirator Michele

Simmons was unsuccessful in her attempts to coerce IDCFS into changing their findings (§ 104); the conspirators were forced to be brazen in their efforts to conceal and suppress all medical and IDCFS's reports in trial court records. It is *reasonable* that, the suppression and concealment of these findings along with gaining a criminal conviction would give substance to Michele Simmons' false allegations; but, also shield the ICCCC from possible judicial scandal and misconduct (§ 51-58). Moreover, denying the existence of IDCFS's findings gives the false impression that IDCFS was never involved in *'People v Frank Simmons'*, when it is known that by Illinois State Law, the IDCFS is required to investigate all allegations of abuse involving a minor. Therefore, including, but not limited to, the Illinois Cook County Circuit Court (ICCCC); Chief Judge Timothy C. Evans; Associate Judge John Thomas Carr; Associate Judge William J. Kunkle; Attorney David Daudell; Associate Judge Michele M. Pitman (formally: Michele McDowell Simmons); the CCSAO; and CCSA Anita Alvarez has *"interest"* in the investigation and outcome of the proceeding *See 55 ILCS 5/3-9008*.

Frank Simmons met with the Federal Bureau of Investigations (FBI) during the winter of 2009-2010 (§103). The FBI Agent stated with the information already provided they started a file and requested that Frank Simmons keep them informed about his case. However, they advised that for the FBI to act; would depend upon the outcome of his criminal trial before Cook County Circuit Court Judge William J. Kunkle. Untrusting now, of our criminal justice system, Frank Simmons has not contacted the FBI since their meetings. **However, it is Frank Simmons hope that the thorough detail of accounts recorded herein is ample and provides the road map the FBI needed to launch a criminal Federal Investigation of, but not limited to, the CCSAO and ICCCC and of the alleged allegations of criminal misconduct contained herein to then engage the US Attorney to prosecute the alleged conspirators of these crimes herein to the fullest extent of the law.** When a corrupt criminal and domestic justice system attacks, abuses, and criminalizes the innocence of citizens it is sworn to protect and conspiring with hired defense counsel to undermine and deceive their client(s) to achieve their self-serving and deplorable objectives to destroys both family structure and community using *coercion of a minor, coercion* of a minor to commit perjury, *perjury, conspiracy, 'conspiracy to obstruct justice'* and *'obstruct of justice'*, as a means, then there is no justice; but, only a mockery of our US Constitution.

## Domestic Battery Conviction:

4. *"A domestic battery conviction in the State of Illinois has dire consequences. Aside from the obvious embarrassment and strain on your interpersonal relationships, domestic battery/violence convictions always remain on your record. This is one conviction that can never be sealed or expunged under Illinois law, except in the unusual circumstance that a convicted batterer receives a Governor's pardon.*

*A domestic battery conviction can result in the limitation/loss of visitation or have unfavorable custody outcomes. Convicted offenders have difficulty getting some types of license and forfeit their 2nd Amendment right to carry a firearm. Many employers will not hire someone who has been convicted of domestic battery. Landlords and credit agencies also have access to the records of this conviction. Laws to protect domestic abuse victims are becoming increasingly proactive. However, this has taken away the*

4

ability of the police to exercise discretion in cases where the charges are being used manipulatively (e.g., in the case of divorce, where one partner wants the other removed from the home). The accusation of domestic battery alone yields serious consequences" as per The Yetter Law Group.

5. This petition is being filed because of Petitioners' concern that the false criminalization of Mr. Simmons was influenced by Michele Simmons' relationship with the Cook County State's Attorney Anita Alvarez and their elite membership in the Cook County criminal justice system. Petitioners believe that had Michele Simmons not been a personal friend of Ms. Alvarez, the CCSAO would not have pursued charging Frank Simmons for domestic battery. The handling of this matter by the Cook County State's Attorney Office (CCSAO) raises questions that cry out for objective, unbiased investigation, including, but not limited to: (a) whether CCSA Anita Alvarez, ASA Paul Pavlus; and/or the CCSAO coerced a minor and/or coerced a minor to commit perjury (a) whether CCSA Anita Alvarez, ASA Paul Pavlus; and/or the CCSAO knowingly conceal and suppress evidence; (b) whether CCSA Anita Alvarez, ASA Paul Pavlus; and/or the CCSAO prepared false evidence and/or tampered with evidence; (c) whether CCSA Anita Alvarez, ASA Paul Pavlus, and/or the CCSAO conspired to and/or with others conceal and suppress evidence; (d) whether CCSA Anita Alvarez, ASA Paul Pavlus; and/or the CCSAO knowingly prosecute an innocent man, Frank Simmons. Therefore, the Cook County State's Attorney, Anita Alvarez, ASA Paul Pavlus; the CCSAO, and Cook County Circuit Court Associate Judge Michele M. Pitman (formally: Michele Simmons) has *"interest"* in the investigation and outcome of the proceeding *See 55 ILCS 5/3-9008.*

6. The Petitioners allege despite personal assurances to the Petitioners by Illinois Cook County Circuit Court (ICCCC) Chief Judge, Timothy C. Evans, on June 8th, 2009 to avoid impropriety and ensured fairness in 'People v Frank Simmons - *09-6-007235* (§ 50); both criminal and divorce proceeding running congruently 'People vs. Frank Simmons' and 'Michele M. Simmons vs. Frank Simmons - *09-D-005497*,' respectively, were each overwhelmed with alleged blatant judicial misconduct, impropriety, conflicts of interest, ex parte communications, conspiracy, conspiracy to obstruct justice, obstruct of justice, concealment, and suppression of evidence in exclusively closed courtroom proceedings (Evans: §§ 56-59; Kunkle: §s 31, 51, 62-73; Carr: 13-14, 53, 55; Brownfield: § 99-101). Therefore, the Illinois Cook County Circuit Court (ICCCC) Chief Judge Timothy C. Evans and Cook County Circuit Court Associate Judge Michele M. Pitman (formally: Michele Simmons) has *"interest"* in the investigation and outcome of the proceeding *See 55 ILCS 5/3-9008.*

7. The Petitioners allege that Chief Judge Timothy C. Evans conspired with Judge Michele Simmons, CCSA Anita Alvarez, and others (now known as: conspirator(s) and/or co-conspirator(s)), in order to shield Michele Simmons, his friend and subordinate judge from possible prosecution and avoid, rather than face the possibility of negative backlash resulting from a Cook County Associate Judge abusing her position of trust and authority to commit a criminal act and affect her divorce. This court will

see that it is *'reasonable'* to assume that since conspirator Michele Simmons was unsuccessful in her attempts to coerce IDCFS into changing their findings; the conspirators were forced to be brazen in their efforts to conceal and suppress all medical and IDCFS's reports in trial court records. It is *'reasonable'* that; the suppression and concealment of these findings along with gaining a criminal conviction would give substance to Michele Simmons' false allegations; but, also shield the ICCCC from possible judicial scandal and misconduct (§ 51-58). Moreover, denying the existence of IDCFS's findings gives the false impression that IDCFS was never involved in *'People v Frank Simmons'*; when it is known that by Illinois State Law, the IDCFS is required to investigate all allegations of abuse involving a minor. Therefore, the Illinois Cook County Circuit Court (ICCCC) Chief Judge Timothy C. Evans, and Cook County Circuit Court Associate Judge Michele M. Pitman (formally: Michele Simmons) has *"interest"* in the investigation and outcome of the proceeding *See 55 ILCS 5/3-9008*.

8. The Petitioners allege that because the allegations were 'Unfounded' and 'Malicious'; conspirator, Chief Judge Tim Evans required a trial judge to be well versed in prosecutorial criminal practices as a *'seasoned prosecutor'* (§ 32-35) willing to comprise the integrity of their judicial position to do whatever it took to secure a conviction on behalf of the ICCCC and Judge Michele Simmons. After a number of questionable judicial self-recusals from judges of lesser acquaintance with Michele Simmons in the rotation, Chief Judge Timothy C. Evans assigned co-conspirator Judge William J. Kunkle the task (§ 30-31); which, created a serious and avoidable *'conflict of interest'* in *'People v Frank Simmons"* criminal proceedings. Therefore, Chief Judge Timothy C. Evans and Judge William J. Kunkle has *"interest"* in the investigation and outcome of the proceeding *See 55 ILCS 5/3-9008*.

9. Co-conspirator, Judge William J. Kunkle, while working in the 1990's for former Cook County State's Attorney Richard M. Daley as a department head, ASA Kunkle mentored and supervised both Michele Simmons and current Cook County State's Attorney, Anita Alvarez. Clearly it would have been *'reasonable'* for Judge William J. Kunkle to have recused himself in *'People v Simmons'* and/or Chief Judge Timothy C. Evans request that Kunkle step-aside in the interest of avoiding impropriety as Chief Judge Evans did in the *'Koschman Case'* (see: *'People v Frank Simmons & Koschman Case* Similarities') as reported by *Sun-Times Staff Reporters: Chris Fusco and Tim Novak on December 17, 2012 article* (Exhibit: I).

## Conspiracy Confirmed by Guardian-at-Litem, Attorney Lester Barclay

10. The Petitioners allege Guardian-at-Litem, Attorney Lester Barclay to also be a conspirator in both On just before criminal trial on March 19, 2010, co- conspirator Guardian-at-Litem, Attorney Lester Barclay informed the Petitioners that he had definitive knowledge that the March 19th, 2010 criminal trial was fixed and just a set-up; that Mr. Simmons just should plead guilty (§ 74-76). The extent of Mr. Barclay's involvement in the conspiracy and/or role is yet to be determined, however, having knowledge

of a crime and the solicitation other(s) to go along with it; look the other way, constitutes aiding and abetting the crime of conspiracy. Therefore, Attorney Lester Barclay has *"interest"* in the investigation and outcome of the proceeding *See 55 ILCS 5/3-9008*.

11. The Petitioners allege that on *'People v Frankie Simmons'- 09-6-007235'* criminal trial dates of January 27th, 2010 and March 19th, 2010; Judge William J. Kunkle conspired with others in premeditated acts and rulings to deceive and commit *'conspiracy to obstruct justice'* and *'obstruction of justice'* by the suppression and concealment of evidence, including but not limited to, IDCFS' report and findings not being considered, mentioned, and/or becoming part of official court record (§ 63-73, 31). This court will see that it is *'reasonable'* to assume that on the January 27th, 2010 trial date; Judge Kunkle conspired with co-conspirators, defense attorney David Daudell and ASA Paul Pavlus unsuccessfully attempted to try 'People v. Frank Simmons' with Mr. Simmons in abstention in order to secure an uncontested conviction (§ 63-70). This court will see that it is *'reasonable'* to assume that on the March 19th, 2010 trial date, Judge Kunkle's pre-trial instructions to the defense and the court was in the interest of *'concealment and suppression'* of evidence; which, he conspired with co-conspirators, defense attorney David Daudell, ASA Paul Pavlus, and others to achieve this *'obstruction of justice'* (§ 71-73). Chief Judge, Timothy C. Evans, Cook County Circuit Court Associate Judge William J. Kunkle, Attorney David Daudell, CCSA Anita Alvarez, ASA Paul Pavlus, Attorney Lester Barclay, Attorney A. Garmon, and Judge Michele M. Pitman (formally: Michele Simmons) has *"interest"* in the investigation and outcome of the proceeding *See 55 ILCS 5/3-9008.*

## Judiciary Questions Defense Attorney David Daudell's Ethics

12. This court will see that co-conspirators David Daudell's and Michele Simmons' serious ethical faults were in question by others in the judiciary, such as, the Honorable Judge Edward Jordan who offers to testify on behalf of Petitioner to the Illinois Judicial Review Board while in the presence of Michele Simmons and her divorce counsel, Attorney Julie A. Garmon; whom both agreed. The Honorable Judge Jordan on record stated that Frank Simmons' defense and divorce attorney, David Daudell was of shady character and should Mr. Daudell approach him for additional attorney fees, to immediately file a complaint with the Illinois Judicial Review Board and he (Honorable Judge Jordan) would personally stand with the Petitioner and testify on his behalf. While it was agreed that Attorney Daudell did not serve and/or act in the best interest Frank Simmons; it cannot be overlooked that the Illinois Judicial Review Board sanctions Judges and not attorneys, therefore it is equally *'reasonable'* to assume that the Honorable Judge Jordan has identified serious ethical faults in the character and integrity of Judge Michele Simmons which need to be reported. In the winter of 2009 – 2010, with his increasing mistrust of the Cook County Justice System, Mr. Simmons did two things. Mr. Simmons contacted both the Federal Bureau of Investigations (FBI) and the Illinois Department of Children and Family Services (IDCFS) (§102-104).

## Chief Judge Uses Financial Abuse to Cement Conspirators Goal

13.   This court will see that it is *'reasonable'* to assume that the conspirator(s) conspired to impose high financial liabilities upon Frank Simmons to deny him equal protection under the law and the right to defend himself in court (§ 53, 55, 60).   The Petitioners allege that Chief Judge Timothy C. Evans and co-conspirators conspired with Cook County Circuit Court - Domestic Relations Court Judge John Thomas Carr who levied *'unreasonably'* high monthly child support and maintenance, in addition to other financial liabilities upon Mr. Simmons in *Michele M. Simmons vs. Frank Simmons, 09-D-005497*.   For example, Frank Simmons' with an annual salary of over $100,000 dollars per year, after standard deductions and paying court ordered child support, has a monthly net income of only $650.00 per month.  Clear this was also done in the interest of destroying Frank Simmons.  Judge John Thomas Carr imposed *'unreasonable'* monthly financial liabilities 3-times higher than federal and state recommended guidelines for monthly child support and maintenance putting Mr. Simmons yearly take-home income well below federal and state poverty levels.  For this form of financial abuse by the ICCCC there is no State of Illinois or Federal *'remedy'*. Therefore, Chief Judge Timothy C. Evans, Associate Judge John Thomas Carr, Attorney David Daudell, Attorney Lester Barclay,  Attorney Julie A. Garmon, and Associate Judge Michele M. Pitman (formally: Judge Michele Simmons) has *"interest"* in the investigation and outcome of the proceeding *See 55 ILCS 5/3-9008*.

## Judiciary Identifies Carr's Financial Abuse – Also Finds Judge Simmons Unreasonable

14.   On August 1, 2012, the Honorable Judge Raul Vega, presiding over Divorce Discovery Hearing for *college contributions and reimbursements for summer camp*, made the following statements, on record, concerning Mr. Simmons' court imposed child support liability ((§ 17): *'Furtherance'*).:

*"The monthly child support payments accessed Mr. Simmons are too high!  This is clearly unreasonable! Clearly your divorce should have been handled out of Cook County District.  You (Ms. Michele Simmons) are an unreasonable person!  I advise that you withdraw your petition for college contributions and reimbursements for summer camp in light of Mr. Simmons bankruptcy filing."*

15.   Chief Judge, Timothy C. Evans is clearly knowledgeable of a similar ICCCC Divorce Court recent ruling in *Judge Maureen P. McIntyre's divorce case* considered to be financially questionable and *'unreasonable'* which drew a judicial ethics investigation by the Illinois Judicial Review Board as reported in the April 17th, 2013 article by *Sun-Times Staff Reporters Chris Fusco and Tim Novak - "Illinois Judicial Inquiry Board investigating judge who's hearing Daley nephew case" (Koschman Case)* (Exhibit: J).  In the divorce ruling, Judge McIntyre was allowed to hold onto most of the couple's assets in divorce, while her former husband Raymond X. Henehan was left with little money to repay loans and debts owed.

16.   This petition is being filed because of Petitioners' concern that the false conviction of Mr. Simmons was influenced by Michele Simmons' employee relationship with the Illinois Cook County Circuit Courts

(ICCCC) as an Illinois Cook County Circuit Court Criminal Judge. Petitioners believe that had Michele Simmons not been an Illinois Cook County Circuit Court Judge, the (ICCCC) would have thrown-out the CCSAO charges against Mr. Simmons for lack of evidence. Moreover, Mr. Simmons would have been treated fairly in his divorce from Michele Simmons. The handling of these matters by the Illinois Cook County Circuit Courts (ICCCC) raises questions that cry out for objective, unbiased investigation, including: (a) whether ICCCC acted to restrict, impede, and/or conceal supporting evidence of Mr. Simmons' innocence from court record. (b) whether the ICCCC, Illinois Cook County Chief Judge, Timothy C. Evans, Judge William J Kunkle, Judge John Thomas Carr, Judge Michele Simmons and/or other employees within the Illinois Cook County Circuit Courts (ICCCC) conspired to cover-up, suppress, and/or effect a means directly and/or indirectly to diminish and/or deprive Mr. Simmons' of his civil rights and liberties afforded by US Constitution. , i.e. inability to defend both criminally and/or domestically: Therefore, Chief Judge Timothy C. Evans, CCSA Anita Alvarez, ASA Paul Pavlus, Associate Judge William J. Kunkle, Associate Judge John Thomas Carr, Attorney David Daudell, Attorney Lester Barclay, Attorney Julie A. Garmon, and Associate Judge Michele M. Pitman (formally: Judge Michele Simmons) has *"interest"* in the investigation and outcome of the proceeding *See 55 ILCS 5/3-9008*.

## Furtherance of Conspiracy

17. It very well may be that the statutes of limitations have run with respect to many of the offenses during the five years since 2009 when the allegation of abuse was first reported. The three-year statute of limitations for the offense of conspiracy, since it is a continuing offense under Illinois law, begins to run anew with each overt act done by a co-conspirator in furtherance of the conspiracy. 720 ILCS 5/3-8 (2000); People v. Perry, 23 Ill.2d 147, 155, 177 N.E.2d 323, 327-28 (1961); People v. Pascarella, 92 Ill:App.3d 413, 415 N.E.2d 1285, 1289 (3d Dist. 1981). Michele Simmons whom initially brought the false allegations of abuse and her attorney Julie A. Garmon, performed acts in furtherance of the conspiracy to obstruct justice when, on at least three separate court dates under oath, she denied that her allegations of abuse where false and stated that Frank had abused SON#1. In those three court appearances, Michele Simmons and attorney Julie A. Garmon went on to state with certainty that Frank Simmons was guilty abuse and that she did not falsely accuse him of abuse of their minor son. These dates are:

1) Cook County Circuit Judge John Thomas Carr around October 13, 2011 dissolution of marriage trial.
2) Honorable Cook County Circuit Judge Edward Jordan at March 28th and 29th 2011 Child Custody Trial; IDCFS testified.
3) Honorable Cook County Circuit Judge Raul Vega on August 1, 2012, discovery hearing comments on the child support liability.

In addition, at court on August 1, 2012, Michele Simmons and attorney Julie A. Garmon argued that Frank Simmons was not a good father because he had not visited the children at the home in years. To which Frank Simmons told The Court that:

*"after he had seen that she could have him arrested and convicted based upon lies, he would not dare come close to the home unless he is personally escorted by the Olympia Fields Police".*

Frank Simmons' *pro se* response garnered applauses and cheers from a number of Cook County Sheriffs whom routinely tracked and gathered together during the close-court room divorce proceedings to offer Frank support and encouragement to keep fighting against Michele Simmons and the ICCCC. These Cook County Sheriffs, both male and female, Black, White, and Hispanic told Frank Simmons that they would keep him in their prayers and to not give-up, to keep fighting. It was clear that visiting that home residence was an attempt by Michele to gain a *'second bite at the apple'* (§ 30).

18. Although the acts enumerated above in furtherance of the conspiracy are some of the numerous ones known to the Petitioners during every domestic court proceeding, it is likely that a full investigation of the possible wrongdoing by Michele M. Pitman (Ms. Simmons and/or Michele Simmons); CCSAO; ASA Paul Pavlus; CCSA Anita Alvarez; ICCCC; Chief Judge Tim Evans; Judge William Kunkle; Judge John Thomas Carr; David Daudell and David Daudell Law Firm ; Julie A. Garmon and Julie A. Garmon, Esq.; Lester Barclay and Barclay, Dixon & Smith, P.C.; Ursula Gulley; and those under them will uncover other recent acts in furtherance of the conspiracy (§ 17). It is also possible that a full investigation will disclose evidence of another continuing conspiracy.

## Character of Frank Simmons

19. Mr. Simmons had been nothing more than a loving, faithful, model husband, and father to his three children, DAUGHTER#1, SON#1, and SON#2. He filmed the births of each of his children and the first parent to hold each of them in the delivery rooms. Mr. Simmons was the parent whom cared for his infant children, up all night, giving them their bottles, changing their diapers, administering the correct dose of their medicine, cradled them, and rocked them back to sleep in a proud loving father's strong arms. When they were hurting or ill, they ran to their father for remedy and comfort. When they were small he taught them the 'Lord's Prayer' and the 23rd 'Psalms' and had weekly prayer with them every Wednesday evening. He took them to church. Mr. Simmons, a scientist, helped them with their math, sciences, homework. Worked on their science fair projects. Mr. Simmons was very active in the community he lived, coached little league baseball and basketball for the community and the Catholic Archdioceses for over 13 years, from time to time, he coached his kid's teams. Sometimes, three practices per week and two game days on the weekend. In the neighborhood, kids affectionately called Mr. Simmons, "Coach". For years, parents dropped their kids off and Mr. Simmons took them Halloween Trick or Treating. Mr.

Simmons was the vegetable gardener, car mechanic, plumber, electrician, painter ....etc. Mr. Simmons cooked the meals, planner and prepared the holiday dinners. Still, Mr. Simmons worked, sometimes working 60 hour work weeks as an Engineer. Mr. Simmons was a model father, showing his children that he is there for them and to his sons, how to be grow to be men. Mr. Simmons has not seen, held, or touched his children in over 5 ½ years.

20. Frank Simmons was first introduced to Michele R. McDowell at Northwestern University by some of his Omega Psi Phi Fraternity Brothers there attending college. Frank was studying Chemical Engineering at the Illinois Institute of Technology (IIT) and Michele was studying pre-law at Northwestern University. They later met again and started dating, Michele a second-year law student at Syracuse University and Frank Simmons CEO of Simtek Industries, Inc., a specialty semi-conductor coating layers, chemical manufacturing company and developing novel nano-coating layers at Northwestern University's Birl Research Institute. Simtek was a client of a number of US Government Agencies including the US Department of Defense. Simtek was the general contractor on the $1.8 million dollar renovation project of the historical Garfield Park Field House for the Chicago Park District under Forrest Claypool and Chicago Public Building Commission (CPBC) under former Mayor Richard Daley.

## Frank Simmons: The Victim of Michele Simmons' Verbal and Physical Abuse Home-Life

21. *NBC News National News Correspondent Jeff Rossen of the investigative series 'The Rossen Reports' reported in his 10/03/14 on domestic violence states that 20% of all domestic abuse victims are men; 1 in 7 men are abused by a partner. Katie Rae Jones CEO of The National Domestic Abuse Hotline states many men and women, suffer in silence. When men reach-out for help from us they often say they tried to reach-out to someone, or their co-workers.*

22. On June 7th, the conversation between the adults that morning at the home residence was not about physical abuse of SON#1; it was about do we stay together as a married couple or divorce, nothing else (§ 91-95). Frank told Michele that their marriage could never work; not until she stopped the physical and verbal abuse of him (see: Child Custody Trial Transcript). Michele did not like his words; and when into a violent tirade, yelling, cussing, beating, and kicking walls and doors and screaming, yelling, telling Frank to come out and confront. Over the years, Frank Simmons had experienced this type of abuse from Michele before, which is why he immediately locked himself in the bathroom for his own personal safety (see: Hearing Transcript pg15 ln.12 thru pg17 ln.1-15).

Michele Simmons continued her abuse of Frank Simmons even after his arrest and conviction in an attempt to gain a *second bite at the apple* (§ 30, 17); which prompted Frank Simmons to tell the Honorable Judge Raul Vega on August 1, 2012, that he would not dare come close to his prior home residence unless he was personally escorted by the Olympia Fields Police which prompted applause from a number of Cook County Sheriffs gathered together in the court room in his support.

The court only need look at her false allegations made in 'People vs. Frank Simmons' but also as recent as approximately June 9th, 2009; Michele stalking Frank. Michele, intentionally following Frank into a Walgreens' parking lot and intentionally blocking the driving path of his vehicle with hers'; knowing that she had an 'Order of Protection' against Frank, was trying to get a chance at a *Second Bite at The Apple* (§ 30). Thereafter, constantly harassing him, stealing his perfectly good working vehicle from his driveway and later, via court-order, returning it in non-working condition! Also, though court ordered, refusing to give Frank his winter coats for two Chicago winters. Moreover, Michele's total lack of restrain from violence as exhibited and witnessed first-hand by Olympia Fields' Police Officer S. Barry - Star #10 who, while escorting Frank via domestic court-order at the home residence was violently attacked by Michele Simmons who began fist-punching Frank Simmons in the chest in the kitchen of the home, where Officer S. Barry physically had to pull her off of Frank Simmons (§ 96-98). Officer Barry, in shock at the magnitude of spontaneous violence just witnessed and the total disregard for his official presence, mutually filed, at the request of Frank Simmons, an Olympia Fields' Police Report for assault of Frank Simmons by Michele Simmons. However, Olympia Fields' Police Chief Jeff Chudwin personally told Frank that he was squashing their police report because she is a Cook County Circuit Court Judge. However, Frank Simmons did manager to keep the Olympia Fields' Police Report # 09-3908 (§ 96-98) (Exhibit G) which was provided to him by Officer S. Barry - Star #10.

**Michele's Violent Abuser Has History**

23. Michele and Frank were married in September 1991. In the early 1990's, Frank Simmons once made the mistake, of unlocking and opening a room door for Michele while she was in a violent tirade, banging and kicking on the opposite side of the door, telling him to come out. When he stepped-out of his office, she jumped on him, straddling her legs around him, like a maniac woman, yelling while taking the fingernails of each her hands and digging them deep into each his face cheeks, drawing long bloody scratches as she pulled down hard. In the sheer shock of the event, Frank instinctively grabbed her wrists, literally having to forcibly lift her hands and fingernails up and out of his bleeding face to prevent her fingernails from going deeper. Told him that he was wrong to grab her wrist and told him to never touch her again. Then Michele threatened Frank, stating that she could use her position as an Assistant Cook County State's Attorney (ASA), call the police and falsely claim that he assaulted her and have him arrested. That because of her position nothing would happen to her. Michele would attempt to use this threat as a controlling noose to physically abuse Frank Simmons in the event he ever physically retaliated. Frank resolved this concern also by going to a room and locking himself in to avoid physical contact (see: Hearing Transcript pg. 100 ln. 1, ln. 9 -13).

24. Michele committed this reprehensible act to Frank's face knowing that within just a few days he and his company, Simtek Industries were to be featured in a photo-opt with then Mayor Richard M. Daley

12

and the Chicago Park District Commissioner Forrest Claypool at the grand opening, ribbon-cutting ceremony of the $1.8 million renovation of the Chicago Park District's historic Garfield Park Fieldhouse. Simtek Industries was the project's a prime contractor. Clearly this was an extremely abusive, selfish, and brutal act of by Michele. Michele felt that she could use her threat as a way to control Mr. Simmons. Michele is a verbally and physically who is vindictive and jealous person. Michele Simmons' same threat is routine and goes back as far as the '1990's which clearly demonstrates premeditation.

25. The children did not escape her physical and verbal abuse, her anger filled, raging-hard slaps across the children faces could cause injury to their brains and necks and was a continuous point Frank reprimanded Michele about (see: Hearing Transcript pg.97 ln. 14-21). She also whipped the children as ASA Paul Pavlus states. However, in the July.10th, 2009 Hearing Transcript, SON#1 tells ASA Pavlus that he does not get whipping from his Dad, and that he could not remember the last time his Dad whipped him, as ASA Pavlus calls it. SON#1 told ASA Pavlus that his father grounds him and not spank him. This is true because years prior Frank told SON#1 privately that he is raising men and men don't get spankings, and that he expects him to act like a man or else get grounded like a child. They both he and SON#1 agreed!

## Frank Reaches-Out to Family and Friends to Quail Michele's Abuse

26. Frank was always a faithful companion and considerate of Michele's bisexuality. Michele discussed her bi-sexuality with Frank. Therefore, Frank knew and accepted it. Michele is an only child and female lovers could be considered like the sisters she never had. Therefore, Frank reached-out to them from time-to-time for counsel to help address Michele's issues. Yes, Frank did once love Michele. She is a lawyer and He a scientist and entrepreneur. She was smart and beautiful and when they were getting along, a great conversationalist when out-and-about. But, his love for her dissipated with the abuse. Frank chose to no longer endure Michele's physical violence and the pain of teeth. Frank Simmons grew up in a home of women where he is the youngest of five siblings, three sisters and a twin brother. He was raised never to hit women and he has never struck a woman to date. He was raised, if a woman did not share his level of restraint, then to walk away and leave her.

27. Therefore, Frank reached-out to his parents, married for over 50 years and Michele's parents, Ursula Gulley and her step-dad, Ernest Gulley, and others and personally organized an intervention talk at their Chicago apartment, to discuss the best ways Michele could better deal with her anger issues. Frank did not believe her outburst were normal. Though the outcome was not to Frank's satisfaction, the intervention concluded that Michele had not been regularly taking her medication for some spastic medical condition. Over the years, Frank has reached out to many, some family, friends, employees, and co-workers for help and/or advice and the census was to leave Michele. Michele physical and verbal abuse of Frank has been discussed and a matter of record amongst numerous family and friends. Frank

Simmons never filed a formal police report of abuse against Michele, because he loved her and did not want to affect her job in a negative way as a former State's Attorney and now currently a Cook County Circuit Court Associate Judge. He thought he could change her and over time he found that he was wrong.

## Prosecutor Anita Alvarez and Criminal Trial Judge William Kunkle are Long-Time Friends of Michele Simmons

28.   Cook County State's Attorney (CCSA) Anita Alvarez and Cook County Circuit Court Associate Judge William J. Kunkle (presided over 'People v. Frank Simmons' criminal trials), are both long-time personal friends and former Cook County State's Attorney Office (CCSAO) colleagues of Michele Simmons.   Judge William J. Kunkle, while working in the 1990's for then former Cook County State's Attorney Richard M. Daley as an Assistant State's Attorney (ASA) Department Head, ASA William Kunkle mentored and supervised both Michele Simmons and Anita Alvarez.

29.   During their 20 year relationship, Mr. Simmons often accompanied Michele Simmons, to numerous CCSAO and ICCCC sponsored after-work, social gathering where Frank mingled with Anita Alvarez, William Kunkle, Tim Evans, and others were in attendance.   Anita Alvarez and others attended the couple's wedding. 'People v. Frank Simmons' trial judge, Judge William J. Kunkle, is a long-time personal friend of Michele Simmons.   While working as a department head in the 1990's for former Cook County State's Attorney Richard M. Daley, ASA William Kunkle mentored and supervised both Michele Simmons and current Cook County State's Attorney, Anita Alvarez.   Therefore, it is 'reasonable' to assume that Frank Simmons has 'reasonably' more knowledge than most of the personal relationships of these Conspirators in question.   Clearly Associate Criminal Judge William J. Kunkle being assigned to preside over 'People v. Frank Simmons' is a serious 'conflict of interest'.

## Cut From The Same Cloth: ASA's Anita Alvarez - Michele Simmons - William Kunkle

30.   Frank remembers Anita Alvarez well; both she and Michele are good friends.   They were both hired about the same time at the Cook County State's Attorney Office.   Also, they each shared the same uncaring, cold-blooded, in-human character flaw side of themselves.   There were cases they personally knew that the defendant was innocent and still they prosecuted them using every prosecutorial trick in the book, and then some.   Such as trying criminal cases were the defendant was in abstention and winning uncontested convictions in court.(§ 64).   With Michele and Anita, it was all about the tally, they were not going to court and coming back empty-handed.   They were going to get some kind of 'paper' on a person.   Michele's efforts earned her the nicknames "Bitch" and "Nails" from her fellow ASA colleagues.   'Paper' meaning getting a criminal conviction on record against the defendant or to enhance the defendant's current criminal record with additional repeat ('second bite of the apple') convictions which result in

harsher criminal penalties at sentencing. Then, ASA William Kunkle and now Judge William Kunkle, was one of their mentors at the CCSAO teaching them the tricks.

## Kunkle Willing to Compromise Integrity for Anita and Michele

31.  After leaving the CCSAO, Attorney William Kunkle was special prosecutor in the 'Hernandez' Case.  It was during this time, ASA Michele Simmons arrived home late that evening stating to the Petitioners that she had just left a meeting with Special Prosecutor William Kunkle which included ASA Anita Alvarez reviewing the confidential 'Hernandez' Case Files, which Michele had an opinion.  Her opinion was the source of debate between the Petitioners and herself the remanding of the evening and into the night.  Michele made Frank swear to never tell of their meeting with Attorney Kunkle and what was done.  That promise has now been broken.  However, the intent speaks directly to the length and depth of Judge William Kunkle's relationship with Michele Simmons and Anita Alvarez, to confide in them enough to maybe compromise the integrity of the position he was entrusted and secretly share with them confidential material (§ 62).

## 'Seasoned Prosecutors': Judge William J. Kunkle, Judge Michele Simmons, CCSA Anita Alvarez and ASA Paul Pavlus

32.  Consideration must be given to the fact that both, Judge William Kunkle and Judge Michele Simmons are *'seasoned prosecutors'*, each being former department heads and co-workers at the CCSAO.  Frank Simmons remembers when his ex-wife, Michele Simmons started with the Cook County State's Attorney Office (CCSAO).  Her training began in Appeals, then Felony Review, then Juvenile, then Abuse and Neglect; so forth and so on, as ASA's work themselves up the ladder, hoping to make 1st chair on a regular court call.  Therefore it is *'reasonable'* to assume that an ASA can be considered expert and/or experienced in Abuse and Neglect prosecution.  Therefore, it is *'reasonable'* to assume that the prosecution of Abuse and Neglect cases within the CCSAO, is one of the fundamental building blocks in an ASA's training.

33.  Prosecutors receive their preliminary conformation from IDCFS if physical violence against a minor occurred, relatively quickly.  IDCFS' findings are essential in determining whether CCSAO should prosecute. As IDCFS Administrator, Ms. Linda Everette Williams told Frank Simmons in about October 2009, "if physical abuse has occurred, we (IDCFS) would have had that person arrested immediately, like back in June 2009" (see: 'IDCFS').

34.  Therefore, it is *'reasonable'* to assume, that ASA Pavlus' false claim, before former *'seasoned prosecutor'*, Judge Kunkle on November 3rd, 2009, that the CCSAO had not yet received IDCFS' findings after 6 months, was ASA Pavlus' method to inform co-conspirator, Judge Kunkle that IDCFS' findings did not favor Michele Simmons and that Michele Simmons' attempt to coerce IDCFS into changing their findings and commit perjury and obstruction of justice was unsuccessful.  Therefore, it is also *'reasonable'*

to assume that the conspirators would seek to suppress and conceal IDCFS' findings and devise an alternate plan(s) to falsely convict Frank Simmons as demonstrated on the January 27th, 2010 and March 19, 2010 Criminal Trial Dates.

35. The Petitioners allege that co-conspirators, Attorney David Daudell, Attorney Julie A. Garmon, Chief Judge, Timothy C. Evans, CCSA Anita Alvarez, Judge William Kunkle, ASA Paul Pavlus, the CCSAO, and the ICCCC in 'People v. Simmons', each knew early-on that Mr. Simmons had not committed abuse based upon ASA Paul Pavlus' false claim that IDCFS had not contacted the CCSAO. The co-conspirators' sole interest was to protect Judge Michele Simmons and her job, because of her false allegations of abuse. The conspirators can be accused of trying to intimidate Frank Simmons into pleading guilty to a crime never committed. The conspirators can be accused of 'conspiracy to obstruct justice' and 'obstruction of justice', for suppressing and/or concealing IDCFS's findings from Frank Simmons and at criminal trial. This 'Obstruction of justice' was assisted greatly by co-conspirator, defense counsel, Attorney David Daudell. Therefore, Cook County Circuit Court (ICCCC); Chief Judge, Timothy C. Evans; Attorney David Daudell, Attorney Julie A. Garmon, CCSA Anita Alvarez, Judge William Kunkle, ASA Paul Pavlus, the CCSAO, and the ICCCC has **"interest"** in the investigation and outcome of the proceeding **See 55 ILCS 5/3-9008** (§ 77-81, 45-49).

36. On the morning of June 7th, 2009, Cook County Circuit Court Criminal Associate Judge Michele Simmons became upset with Frank's request for a divorce and when into an abusive violent tirade (§ 91-95). In a dastardly premeditated act of criminal conspiracy Michele had already set in motion her long-time plot to make good her threat. Unsuccessful in her recent attempts to coax physical contact with Frank to incite a fictitious altercation; Michele decided to use innocent SON#1, hatching her plot in the bedroom of SON#1; while the other children showered after dinner on the evening of June 6th 2009. Michele, the mother he loves, is coercing him to intentionally lie on the father he loves. The Petitioners ask that this Court consider the magnitude of conflict(s) Michele creates in the mind of minor SON#1. Michele testifies at the July 10th, 2009 hearing, that on the evening of June 6th 2009, SON#1 was not crying after his earlier altercation with younger brother, SON#2; he was not crying through his dad's lecture; he was not crying through dinner with his other siblings while their dad continued to lecture them; SON#1 was not crying when he retired from the dinner table to his upstairs bedroom. However, Michele, who was in SON#1's upstairs bedroom after dinner, testifies at the July 10th, 2009 hearing, that SON#1 cried all night. We know on June 7th, 2009 after Frank Simmons arrest, audio/recorded conversation (Exhibit E) from Frank's cellphone at the home; the audio of SON#1 can clearly be heard crying, standing close to the cellphone in the kitchen, telling both Michele and her mother, Ursula Gulley as they continued to coerce him; that his dad did not stomp in his chest and his dad did not hurt him. Literally, crying, telling them that what they were telling him to say was not true (§ 90) (Exhibit E).

37. As Michele Simmons testifies, for two years Frank had been sleeping on the downstairs sofa (see: Hearing Transcript pg28 ln1-9) as a matter of choice. Frank could no longer bare to touch or be intimate with his abuser, Michele Simmons. Also, two years prior, in preparation for divorce, Frank had already separated his banking from the join account he shared with Michele for years. Therefore, it is 'reasonable' to assume Michele knew long before June 2009 that Frank was seeking to leave their marriage. In the Spring of 2009', Michele was again making attempts to provoke some sort of physical contact with Frank, such as trying to get him to touch her so that she could do a fake soccer flop to the floor to draw attention as if was abused. In one instance, Frank had just purchased himself a number of pairs of Spring and Summer shoes and placed the bags on the bed in the master bedroom, when Michele confronted him, physically blocking the doorway and path for him to exit the master bathroom, cussing and yelling insinuating that the disposable sock found in one of the bags belonged to someone else. Michele was intentional yelling to gain the attention of other in the home as she swerved her hip to block his path, However, Frank did not fall for it. He advised her that this is the nylon sock they give everyone who tries on shoes and not wearing socks; which deescalated her roost. During the time, Michele intensified her threat to Frank, that she could have him thrown out of the house and he would never see his kids. Again, Frank has raised his children and while living under the constant abusive threat from Michele that she would use her job position to have him falsely arrested.

## Illinois Department of Children and Family Services (IDCFS) Conclude Michele Simmons' Abuse Allegations to Be "Unfounded" and "Malicious"

38. On September 23, 2009, the Illinois Department of Children and Family Services (IDCFS), after a 4-month investigation, which included interviews of the alleged victim and witnesses, medical, and police/arrest reports, concluded in a 40-page report, IDCFS SCR #1868829-A[1] - *People v Frankie Simmons* - 09-6-007235, that Michele Simmons' allegations of domestic battery abuse was fictitious, *"Unfounded" and "Malicious"*. Although, clearly, no abuse occurred; Frank Simmons was still prosecuted and convicted on March 19th, 2010 by the Illinois Cook County States' Attorney (CCSA) Anita Alvarez and Illinois Cook County Circuit Court Associate Criminal Judge, William J. Kunkle respectively; who are both long-time friends and former Illinois Cook County State's Attorney (CCSAO) colleagues of Michele Simmons.

## The Honorable Judge Edward Jordan rules: IDCFS Report and photos taken of SON#1 on June 7th, 2009 by Frank Simmons as Unimpeachable Pieces of Evidence

39. At the Child Custody Trial, *"Michele M. Simmons vs. Frank Simmons - 09-D-005497"*, on March 28th and 29th 2011, in Domestic Relations Court, before the Honorable Judge Edward Jordan; IDCFS Caseworker Lonnie Clemmons was Pro Se subpoenaed (Exhibit C) and testified to IDCFS's *People v. Simmons* SCR #1868829-A report (Exhibit A) and IDCFS's findings (Exhibit B) (§ 104) under direct and

Pavlus from the Rolling Meadows Court House to the Bridgeview, Illinois Court House to prosecute the criminal case.

43. Contrary to Illinois State Law pursuant to Rules 300, Section 300.30, and IDCFS' recommendation, the CCSAO refused to even consider and/or prosecute Michele Simmons for making false abuse allegations; which is unusual and clearly *'unreasonable'*. It is *'reasonable'* practice that the CCSAO immediately cease prosecuting cases where IDCFS has identified false allegations of abuse and seek to prosecute the accuser. Therefore, Cook County State's Attorney Anita Alvarez, ASA Paul Pavlus, and CCSAO has *"interest"* in the investigation and outcome of the proceeding *See 55 ILCS 5/3-9008*.

44. [1] IDCFS - Illinois State Law (pursuant to Rules 300, Section 300.30) states: Records of unfounded CA/N reports and informal unfounded reports shall be retained for five years if the subjects of the report request retention in writing because they believe the report was an intentional false report. If the supervisor agrees that the report was an intentional false report, Department procedures for discouraging intentional false reports are to be followed. These procedures include SCR: • Notifying reporters who are believed to be reporting CA/N falsely that it is a violation of Illinois law to knowingly file a false report; and • Giving information about reporters who have filed an intentional false report to the State's Attorney for consideration of prosecution

## CCSAO & ASA Paul Pavlus Committed Misconduct:

45. Poor minor SON#1 and conspirators, CCSA Anita Alvarez, the CCSAO, Michele Simmons and ASA Paul Pavlus and give numerous distinctly different variations of the alleged physical abuse to have occurred on June 6, 2009, even in caparison to documented official police, IDCFS, and CCSAO reports and testimony. At the June 10th, 2009 Criminal Hearing before Judge Gary L. Brownfield (retired), ASA Pavlus and Michele Simmons state that, on the evening of June 6th, 2009, Mr. Simmons brutally stomped in the chest of SON#1 and brutally beat him in the head multiple times. This court will see, that the conspirators fabricate allegations of abuse at sheer will with little regard for the consequences of the crimes they commit: coercion, perjury, *'conspiracy to obstruct justice'* and *'obstruct of justice'* false evidence; evidence tampering; and suppression and concealment of evidence.

46. Example of coercion of minor SON #1 by ASA Pavlus: The false accusation that Frank Simmons stomped in SON#1's chest has only been made by Michele Simmons and ASA Paul Pavlus; it is not stated any were else; not in the police report; IDCFS Report; medical report; or even in CCSAO's report. At the July 10, 2009, criminal hearing, minor SON#1, while under direct examination by ASA Pavlus; Judge Gary L. Brownfield (retired), verbally chastised, ASA Pavlus on record, for falsely stating, demonstrating, and implying to SON#1, clearly coerced to say: "Yes", actually does not mean: "Yes" to that his father (Frank Simmons) stomped in his chest when SON#1 just demonstrated for the court that his father, Frank Simmons did not stomp in his chest. Therefore it is *'reasonable'* to assume that ASA

19

cross examination by Frank Simmons and opposing counsel Julie Garmon. In addition to the IDCFS' report, Frank Simmons also entered into evidence the photos taken of SON#1 on the morning of June 7th, 2009 (Exhibit D). However, Judge Edward Jordan refused to allow into evidence, the audio recording also taken by Frank Simmons on the morning of June 7th, 2009 (Exhibit E) (§ 90). The Honorable Judge Jordan thanked IDCFS Caseworker Lonnie Clemmons for his testimony and then ruled stating:

"The IDCFS' People v. Simmons: SCR #1868829-A Report with the medical report, and photos taken on the morning of June 7th, 2009 by Mr. Simmons of his son, SON#1, showing no signs of abuse; were each unimpeachable pieces of evidence."

Michele Simmons and her divorce counsel, Attorney Julie A. Garmon, both agreed with the Honorable Judge Edward Jordan rulings on this evidence. (§ 17: *Act of Furtherance of the conspiracy to obstruct justice (720 ILCS 5/3-8 (2000) furtherance)*.

## Illinois Department of Children and Family Services (IDCFS) Recommends to The Illinois Cook County State's Attorney Office (CCSAO) to Prosecute Judge Michele Simmons

40. On September 23, 2009, the Illinois Department of Children and Family Services (IDCFS), after a 4-month investigation, which included interviews of the alleged victim and witnesses, medical, and police/arrest reports, concluded in a 40-page report, IDCFS SCR #1868829-A1 - 'People v Frankie Simmons' - 09-6-007235, that Michele Simmons' allegations of domestic battery abuse on 7/6/09 was fictitious, "Unfounded" and "Malicious".

41. By Illinois State Law, IDCFS is required to send an SCR Notice, (pursuant to Rules 300, Section 300.30), to notify the Cook County State's Attorney Office (CCSAO) when legal actions have been taken as a result of unfounded, false, and malicious reports of abuse for prosecution of the offender by the (CCSAO). IDCFS complied with (Rules 300, Section 300.30), formally notifying CCSAO as early as September 2009 and also received IDCFS' 40-page report: *People v. Simmons: SCR #1868829-A* no later than early October 2009. Pursuant to Illinois State Law: Rules 300, Section 300.30, IDCFS SCR #1868829-A, recommended that the CCSAO drop domestic battery criminal charges against Frank Simmons and prosecution Michele Simmons for making false allegations.

## Cook County State's Attorney Office (CCSAO) Refuses to Prosecute Judge Michele Simmons

42. Despite receiving the IDCFS SCR #1868829-A report that no abuse occurred; having no evidence to support criminal charges; and having creditable knowledge from IDCFS that Michele Simmons' allegations were false; Anita Alvarez continued to endorse the domestic battery charges and vowed that she would be personally handling the prosecution of Mr. Simmons in '*People v. Frank Simmons*' Case, and true to her words, she assigned CCSAO Department Head, Assistant State's Attorney (ASA), Paul

Paul Pavlus has possibly committed *coercion of a minor* to commit *'perjury'*, which is *'conspiracy to obstruct justice'* and *'obstruct of justice'*; since only he and Michele Simmons have made this false allegation. (See: July 10, 2009, *People v Simmons* Hearing Transcript pg.113, Ln 6). Gary L. Brownfield reprimand of ASA Paul Pavlus states:

47. "Mr. Simmons did not stomp in his son's chest. I had SON#1 step down and demonstrate for the court what was done, and it certainly wasn't done the way you (ASA Pavlus) just did it, okay. If you're going to argue to me, don't try to change things, alter it, and make it different than what it was, because he described it and he showed me right there. He showed all of us!" (*See: Hearing Judge Brownfield Irregularities*).

48. In another contradiction, Michele Simmons stated to IDCFS on 6/8/2009 pg. 19, that Mr. Simmons did not stomp in SON#1's chest; but that, she entered the room and saw Frank Simmons straddled on top of SON#1 beating him in the chest. However, in withstand testimony on 7/10/2009, Michele Simmons states that she did not witness anything, but that she was told what transpired (Hearing Transcript pg.38, Ln 2). On 8/10/09 as per IDCFS interview Report pg. 31, "SON#1 stated to IDCFS that his father, Frank Simmons did not stomp in his chest; but that, he pinned him down and began beating him in the chest when his mother, Michele Simmons walked into the room and witnessed it. He also stated that he loves his father and that he wants to see him. He stated that he does not know what he will say to his father. He stated that his father has not been abusive to him in the past." It is 'reasonable' to assume that Michele Simmons has commit 'perjury'; which is *'conspiracy to obstruct justice'* and *'obstruct of justice'*

49. In another example of coercion, while still under direct examination by ASA Pavlus, SON#1, after a leading question, states "Yes" that his father brutally beat him in the head multiple times on multiple occasions that evening (see: July 10, 2009, *People v Simmons* Hearing Transcript pg.50, Ln 16; pg.51 Ln 20; pg.54 Ln 4); which is distinctly different than SON#1's and Michele Simmons' documented statements; that Frank Simmons hit SON#1 once in police, IDCFS, and even CCSAO reports. Therefore it is 'reasonable' to assume that the many contradicting variations of supposed physical violence alleged by the CCSAO, CCSA Anita Alvarez, Michele Simmons, and ASA Paul Pavlus in 'People v. Frank Simmons' are consistent with fictitious accusations and are too numerous to detail. Therefore it is *'reasonable'* to assume that SON#1 was *'coerced'* into committing *'perjury'*. Clearly the crimes committed against minor SON#1 are unconscionable. To force a child to tell lies against the father he loves; one who has taken such an active role in his life. Once the evil deed done; cast him aside to rustle with his role in the reason why his father, of his sister and little brother is no longer around. Wondering what he is going to say to his father when he sees him. This is the real tragedy and is criminal! Anita Alvarez and ASA Paul Pavlus obviously do not care about SON#1's state of mind, he is not their child; but SON#1 is Michele Simmons child. This is the real Michele Simmons; the conniving, extremely selfish and abusive person she is; one who does not care about who she hurts, one will stop at nothing, even if it means using her own child as a pawn to affect her own personal resentments. This abuse is also evident from her history of actions (§ 21-25), including on the morning of June 7th, 2009 (§ 91-95) and the physical

assault upon Mr. Simmons witnessed by Olympia Fields Police (§ 22, 96-98). Hear the anguish and confusion in SON#1's statement to IDCFS on 8/10/09 and feel his pain saying: "that he loves his father and that he wants to see him.....that he does not know what he will say to his father".

## Chief Judge Timothy C. Evans: Personally Gives Vow to Avoid Impropriety

50. On June 8th, 2009, Illinois Cook County Chief Judge, Timothy C. Evans personally ordered Cook County, Markham 6-District Presiding Judge, Marjorie C. Laws to transfer Mr. Simmons' bail hearing from the Markham 6-District Courthouse to the Bridgeview Courthouse to avoid the hint of any impropriety as per her real-time conveyance to Fred Simmons and his parents while in a joint conversation with Judge Tim Evans on her phone. Presiding Judge, Marjorie C. Laws also advised Fred Simmons and his parents that Chief Judge, Timothy C. Evans would be personally handling this situation and tell them not to worry, everything would be alright. Judge, Marjorie C. Laws then hung-up her conversation with Chief Judge, Timothy C. Evans and called to notify the Bridgeview Courthouse to remain open late to receive Mr. Simmons' bond hearing. Therefore, Illinois Cook County Chief Judge, Timothy C. Evans and Markham 6-District Presiding Judge, Marjorie C. Laws has *"interest"* in the investigation and outcome of the proceeding *See 55 ILCS 5/3-9008*

## Chief Judge Evans' and Judge Michele Simmons Create 'Conflict of Interest'

51. Ms. Michele Simmons, often boasted over the years how she was a favorite of Chief Judge Timothy C. Evans. He showed favor by allowing her, an associate judge, to keep the same good criminal court room with primo chambers when colleagues, including some full Circuits, were forced to rotate to various other court rooms every 60 days or less. She also boasted how Chief Judge, Timothy C. Evans kept her in criminal court which was primo also; because of her former background as a CCSAO Boss and that her colleagues were jealous. How some of her full Circuit Colleagues were dumb and would not have a clue how to properly run a criminal court room. How they don't keep up with criminal law and don't know how it should be properly applied. They assign incorrect punishments, sometimes over-handed and sometimes under-handed. Therefore, clearly it is *'reasonable'* to assume that Chief Judge, Timothy C. Evans has a personal, if not professional admiration for Judge Michele Simmons. Therefore it is *'reasonable'* to assume that Chief Judge, Timothy C. Evans and Judge Michele Simmons are friends and clearly this is a *'conflict of interest'*. Therefore, Illinois Cook County Chief Judge, Timothy C. Evans has *"interest"* in the investigation and outcome of the proceeding *See 55 ILCS 5/3-9008*

## Incompetence or Worse: Chief Judge Timothy Evans' Creates Hot Bed of Impropriety in Both Criminal and Domestic Proceedings

52. Despite the personal assurances made on June 8th, 2009 by the Illinois Cook County Circuit Court (ICCCC) Chief Judge, Timothy C. Evans, to avoid impropriety and ensured fairness in both Mr. Simmons'

Criminal and Divorce proceeding running congruently, '*People v Frank Simmons - 09-6-007235 and '*Michele M. Simmons vs. Frank Simmons - 09-D-005497'* respectively, each were overwhelmed with blatant judicial misconduct, impropriety, conflicts of interest, ex parte communications, conspiracy, conspiracy to obstruct justice, concealment, and suppression of evidence (**Evans**: §§ 56-59; **Kunkle**: §s 31, 51, 62-73; **Carr**: 13-14, 53, 55; **Brownfield**: § 99-101). Therefore, Cook County Circuit Court (ICCCC) Chief Judge, Timothy C. Evans has *"interest"* in the investigation and outcome of the proceeding *See 55 ILCS 5/3-9008*. (See: 'Timothy C. Evans Irregularities'; Carr Irregularities'; and Kunkle Irregularities')

## Chief Judge Evans & Domestic Relations Court Judge John Thomas Carr's Uses Financial Abuse to Possibly Commit Obstruction of Justice Among Other Crimes:

53. Mr. Simmons' Criminal and Divorce proceeding, running congruently. In June 2009, Cook County Domestic Relations Court, Divorce Court placed high and '*unreasonable*' financial liabilities upon Mr. Simmons shortly after Mr. Simmons hired shady Attorney Mr. David Daudell as counsel for both his criminal and divorce proceeding. Judge John Thomas Carr literally laughed and made jokes during his ruling in Michele Simmons v. Frank Simmons as he reduced Mr. Simmons monthly net income to $650.00 hundred dollars per month and added additional debt of Michele Simmons to him; In comparison to his wife at the time, Judge Michele Simmons, who's monthly net-income of approximately $11,000.00 thousand dollars was significantly greater than that of Mr. Simmons. Judge John Thomas Carr imposed '*unreasonable*' monthly financial liabilities 3-times higher than federal and state recommended guidelines for monthly child support and maintenance putting Mr. Simmons yearly take-home income well below federal and state poverty levels.

54. On August 1, 2012, the Honorable Judge Raul Vega, presiding over Divorce Discovery Hearing for *college contributions and reimbursements for summer camp*, made the following statements, on record, concerning Mr. Simmons' court imposed child support liability:

*"The monthly child support payments accessed Mr. Simmons are too high! This is clearly unreasonable! Clearly your divorce should have been handled out of Cook County District. You (Ms. Michele Simmons) are an unreasonable person! I advise that you withdraw your petition for college contributions and reimbursements for summer camp in light of Mr. Simmons bankruptcy filing"* (§ 17 : '*Furtherance*').

## Judge John Thomas Carr Gives Dose of Insult with Frank Simmons' Injury

55. On October 13, 2011, Judge John Thomas Carr comments to Mr. Simmons, at the time were particularly unconscionable, malicious and demining as he reviewed Mr. Simmons' financial discover, he laughed. Holding Mr. Simmons bank statement, Judge John Thomas Carr asked the question, "I see you go to Iwan Ries? You smoke cigars? I see you had a $15.00 dollar charge here? Mr. Simmons responded, "Yes". So what do you like? Mr. Simmons, Response, "Padron." Judge John Thomas Carr

then responded, "So you had one cigar this month? You are going to have to give that up for here-on", he continued to snicker. He then stated, "You look like you can use a drink? You seem like a niece guy! Hey, I will buy you a drink, since I see you obviously cannot afford one now!" Here, I will take you to Petterino's Restaurant across the street and buy you a drink!" "Here, you can meet me over there!" "You want to go now?" You look like a resourceful man, I have no doubt that you are going to make more money in the future." Mr. Simmons then stood up from his seat and quietly walked out of Judge John Thomas Carr's Courtroom and never returned.

## Chief Judge Timothy Evans Familiar with Other Financially Questionable Divorce Decrees Involving Judges:

56.   Chief Judge, Timothy C. Evans is clearly knowledgeable of a similar ICCCC Divorce Court recent ruling in *Judge Maureen P. McIntyre's divorce case* considered to be financially questionable and *'unreasonable'* which drew a judicial ethics investigation by the Illinois Judicial Review Board as reported in the April 17th, 2013 article by *Sun-Times* Staff Reporters *Chris Fusco and Tim Novak - "Illinois Judicial Inquiry Board investigating judge who's hearing Daley nephew case" (Koschman Case)* (Exhibit: J).  In the divorce ruling, Judge McIntyre was allowed to hold onto most of the couple's assets in divorce, while her former husband Raymond X. Henehan was left with little money to repay loans and debts owed.

57.   Both *'Michele Simmons v. Frank Simmons'* and *Judge Maureen P. McIntyre's* divorce decrees prove beyond a *'reasonable'* doubt that Circuit Court Judges can fashion the outcomes of their divorces to their whim; even to be financially questionable and *'unreasonable'*.  Therefore, Cook County Circuit Court Judge Michele Simmons, Cook County Circuit Court (ICCCC) Chief Judge, Timothy C. Evans and Domestic Relations Judge John Thomas Carr has **"interest"** in the investigation and outcome of the proceeding **See 55 ILCS 5/3-9008**.

58.   This petition is being filed because of Petitioners' concern that the false conviction of Mr. Simmons was influenced by Michele Simmons' employee relationship with the Illinois Cook County Circuit Courts (ICCCC) as an Illinois Cook County Circuit Court Criminal Judge.  Petitioners believe that had Michele Simmons not been an Illinois Cook County Circuit Court Judge, the (ICCCC) would have thrown-out the CCSAO charges against Mr. Simmons for lack of evidence.  Moreover, Mr. Simmons would have been treated fairly in his divorce from Michele Simmons.   The handling of these matters by the Illinois Cook County Circuit Courts (ICCCC) raises questions that cry out for objective, unbiased investigation, including: (a) whether ICCCC acted to restrict, impede, and/or conceal supporting evidence of Mr. Simmons' innocence from court record. (b) whether the ICCCC, Illinois Cook County Chief Judge, Timothy C. Evans, Judge William J Kunkle, Judge John Thomas Carr, Judge Michele Simmons and/or other employees within the Illinois Cook County Circuit Courts (ICCCC) conspired to cover-up, suppress, and/or effect a means directly and/or indirectly to diminish and/or deprive Mr. Simmons' of his civil rights

and liberties afforded by US Constitution. , i.e. inability to defend both criminally and/or domestic. Therefore, the Illinois Cook County Circuit Courts and Chief Judge, Timothy C. Evans, has *"interest"* in the investigation and outcome of the proceeding *See 55 ILCS 5/3-9008*

## No Remedy or Relief From Illinois Cook County Circuit Court Imposed Financial Abuse:

59. Though Mr. Simmons filed timely appeals for both *09-6-007235* and *09-D-005497*, Mr. Simmons was unable to hire new counsel to complete the task. This was due to, Cook County Circuit Court - Domestic Relations Judge John Thomas Carr, levied *'unreasonably'* high monthly child support and maintenance and other financial liability upon Mr. Simmons in *'Michele M. Simmons vs. Frank Simmons, 09-D-005497'*. Frank Simmons was thus denied equal protection under the law and the right to defend himself in court. Illinois State Law requires that monthly child support and maintain be garnished from one's salary and U.S. Federal Bankruptcy Law doesn't address nor provide *'remedy'* from *'unreasonably'* high monthly child support and maintenance payments. This form of financial abuse by the Illinois Cook County Circuit Courts, silences and violates the Civil Rights of the *'game fully employed'* by preventing them from seeking equal protect under the Law. For this form of abuse by the Illinois Cook County Circuit Courts and Justice System, the State of Illinois has no *'remedy'*. Therefore, Cook County Circuit Court (ICCCC) Chief Judge, Timothy C. Evans and Domestic Relations Judge John Thomas Carr has *"interest"* in the investigation and outcome of the proceeding *See 55 ILCS 5/3-9008*.

## ICCCC Denies Frank Simmons Legal Defense

60. Moreover, ICCCC denied Mr. Simmons' requests for legal assistance. Though attempted, Frank Simmons could not qualify for private not-for-profit legal assistance due to his annual salary exceeding their minimum requirements to provide assistance. Clearly, Mr. Simmons's equal protection under the law has been compromised. After Attorney David Daudell was paid his initial retain retainer, it made it impossible to hire other legal counsel. Thus, forcing Mr. Simmons to maintain Attorney Mr. Daudell for criminal and divorce counsel (see: Honorable Judge Jordan and David Daudell). Therefore, Cook County Circuit Domestic Relations Court, Divorce and Judge John Thomas Carr has *"interest"* in the investigation and outcome of the proceeding *See 55 ILCS 5/3-9008*.

## Frank Simmons Forced to File Bankruptcy

61. Mr. Simmons was forced to file Chapter 7 Bankruptcy for financial relief in July 2012. However, US Federal Bankruptcy does not grant relief from State Court Ordered Child Support payments. Mr. Simmons still endures this heavy court imposed financial abuse, now for over 5-years. Therefore, for this form of financial abuse, Illinois State Court and/or the U.S Federal Bankruptcy Court has no remedy or path for relief.

## Chief Judge Timothy Evans' and Judge William J. Kunkle Creates Impropriety and 2nd Conflict of Interest

62. Chief Judge, Timothy C. Evans, created a serious and avoidable *'Conflict of Interest'* in *'People v Simmons''* criminal proceedings when he assigned Judge William J. Kunkle as trial judge. Judge William J. Kunkle, while working in the 1990's for former Cook County State's Attorney Richard M. Daley as a department head, ASA Kunkle mentored and supervised both Michele Simmons and current Cook County State's Attorney, Anita Alvarez. Clearly it would have been *'reasonable'* for Judge William J. Kunkle to have recused himself in *'People v Simmons'* and/or Chief Judge, Timothy C. Evans request that Kunkle step-aside in the interest of avoiding impropriety as Chief Judge Evans did in the *'Koschman Case'* (see: *'People v Frank Simmons & Koschman Case* Similarities') as reported by *Sun-Times Staff Reporters:* Chris Fusco and Tim Novak on *December 17, 2012 article which read* (Exhibit: I):

> "*The involuntary manslaughter prosecution of Richard J. "R.J." Vanecko, a nephew of former Mayor Richard M. Daley, was put on hold Monday when Cook County's chief judge asked the Illinois Supreme Court to assign a judge from outside Cook County to preside over the politically explosive case. Chief Judge Timothy C. Evans made the request after Cook County Associate Judge Arthur F. Hill Jr. stepped aside out of "an abundance of caution" over his ties to Daley, for whom Hill worked when Daley was Cook County state's attorney*"

Therefore, Cook County Circuit Court (ICCCC) Chief Judge, Timothy C. Evans and Judge William J. Kunkle has **"interest"** in the investigation and outcome of the proceeding *See 55 ILCS 5/3-9008.*

## Criminal Judge William J. Kunkle May Have Committed 'Conspiracy to Obstruct Justice' and 'Obstruction of Justice'

63. Frank Simmons was found guilty of *'Domestic Battery of a Minor'* on March 19th, 2010 in a bench trial by Cook County Circuit Court Criminal Associate Judge William J. Kunkle which is clearly a *'Conflict of Interest'* (see: *'Conflict of Interest'* ). On criminal trial dates January 27th, 2010 and March 19, 2010 in *'People v Frankie Simmons'- 09-6-007235*, the Judge William J. Kunkle, is alleged to have conspired with co-conspirators to commit *'conspiracy to obstruct justice'* and *'obstruction of justice'* by preventing IDCFS' findings from being considered, mentioned, and/or becoming part of official court record. Thus, denying the existence of IDCFS's findings and the appearance of IDCFS' involvement in *'People v Frankie Simmons'* in order to shield Michele Simmons' and ICCCC from possible judicial scandal of Cook County Circuit Court Criminal Judge caught making false domestic battery allegations; However, Judge Kunkle stated on 10/08/09 and 11/03/09 that he himself would be very interested in seeing IDCFS' findings therefore granting continuances at the request of ASA Paul Pavlus who falsely claimed that the CCSAO had not received any information from IDCFS and were still awaiting the results from their subpoena.

## Criminal Judge William J. Kunkle Conspirers to Conduct January 27th, 2010 Criminal Trial Proceeding with Frank Simmons in Abstention Unsuccessfully

64. On January 27th, 2010, 'People v Frankie Simmons'- 09-6-007235, criminal trial date, Judge William J. Kunkle, may have committed 'conspiracy to obstruct justice' and 'obstruct of justice'. There are strong reasons which implies that Judge William J. Kunkle, conspired unsuccessfully with defense counsel Mr. David Daudell, ASA Paul Pavlus, and Michele Simmons (§ 77-81, 63-73). to conduct the criminal trial proceedings with Mr. Simmons in abstention. The Petitioners allege that it is 'reasonable' that the conspirators attempted to gain an uncontested Domestic Battery conviction against Mr. Simmons in order to give substance to Michele Simmons' false allegations; and also to avoid having to place the minor children on the witness-stand again and risk further damage from their scripted and coerced testimony; as occurred on July 10, 2009 at the Criminal Court Hearing before Judge Brownfield (§ 100-101). Therefore, William J. Kunkle, David Daudell, Paul Pavlus, Timothy C. Evans, Anita Alvarez, CCSAO, ICCCC, and Michele Simmons has **"interest"** in the investigation and outcome of the proceeding **See 55 ILCS 5/3-9008**.

65. On January 26, 2010, defense attorney, David Daudell called Mr. Simmons to tell him that he was sick and would not be able to attend court the following day for his January 27th, 2010, criminal trial date and told Mr. Simmons not to show-up to court January 27, 2010. Attorney Daudell told Mr. Simmons that he would have an attorney (Ms. Katie Cotter) from his law firm to stand-in for him to request a continuance and that he had spoken to ASA Paul Pavlus of his condition and ASA Pavlus was in agreement with the continuance.

66. However, the Petitioners, did attend court on January 27th, 2010; since they did not trust defense counsel, David Daudell. Frank Simmons who had never met Attorney Katie Cotter from Attorney David Daudell's Law Offices, outside the court room ASA Paul Pavlus had to introduce Mr. Simmons to Attorney Cotter. Attorney Katie Cotter was surprised to see Mr. Simmons and told him that she was not expecting him because Attorney David Daudell had told her the he (Frank Simmons), was sick and would not be able to attend court. She then asked the Petitioners if they were ready for trial, which they responded, "yes". Attorney Cotter then informed (ASA) Paul Pavlus that the Defense was 'ready for trial' since Mr. Simmons had arrived. ASA Paul Pavlus had informed Attorney Ms. Cotter prior that the prosecution was ready for trial before Mr. Simmons had arrived to court. This is clearly contrary to the agreement Attorney David Daudell stated on January 26, 2010; he made with ASA Paul Pavlus to jointly request a continuance in light of his absence. In addition, Attorney David Daudell, lied when he told Attorney Cotter that Mr. Simmons was sick and would not be attending court, when in fact Daudell had told Mr. Simmons that he was sick and would not be attending court. ASA Paul Pavlus, along with alleged co-conspirators in attendance Lester Barclay, Julie Garmon, Ursula Gulley, and Michele Simmons each displayed a noticeable look of shock and astonishment to see Mr. Simmons in attendance at court.

67. As they all entered his court room, Judge William Kunkle also appeared noticeably shocked and astonished to see Mr. Simmons in attendance at court. ASA Paul Pavlus now standing in the court room aisle behind Mr. Simmons out of view, told Judge Kunkle that the CCASO was not ready for trial. Judge Kunkle, then replied, "I did not set this date for Trial". ASA Paul Pavlus replied in a corrective posture to Judge Kunkle saying "you did schedule this for trial; however, we are not ready because the children are not here. They needed to attend school this morning." Judge Kunkle then replied in a corrective posture to ASA Pavlus, stating again that January 27th, 2010 was not a scheduled date for trial, that he would have the record corrected and grant a continuance to the prosecution. Judge Kunkle, then set a new trial date for 03/19/10.

68. Judge Kunkle's denial of his own action and his willingness to alter record unofficially to reflect a trial date as a continuance date as oppose to what actually transpired, a trial date being continued record raises a concerns. ASA Paul Pavlus documentation clearly corresponded with the defense's record Cook County Clerk's official print-out acquired in December 2009 by Mr. Simmons showing a 01/27/10 as a scheduled date for trial; which Judge Kunkle obviously saw also, but would later alter record. However, the gang was all there so to speak, for the prosecution, Michele Simmons, her aunt, her Mother, Ursula Gulley, her divorce attorney, Julie Garmon, and the Guardian-At-Liem, Lester Barclay. For the defense, it was the Petitioner minus defense counsel, David Daudell.

69. The Petitioners allege that Mr. Simmons' decision not to take the advice of defense counsel, David Daudell and instead appear at criminal court on January 27th, 2010 resulted in a problematic reaction by alleged co-conspirators, Judge William Kunkle and ASA Paul Pavlus; because, Attorney Ms. Cotter was not their trusted co-conspirator, Attorney David Daudell. When Frank Simmons appeared at criminal court, Attorney Katie Cotter then informed ASA Pavlus that the defense was now ready for trial. Therefore, it would have been *'reasonable'* to assume that Attorney Cotter would have earnestly attempted to defend Mr. Simmons. Thus, the potential risk of having IDCFS mentioned and/or their findings disclosed at trial was too large a risk; which, could torpedo the conspirators' conspiracy hinged on concealment. As a result, co-conspirators, Judge Kunkle and ASA Pavlus, noticeably rattled, rather than take the risk, they both retreated immediately within the allotted limitations of their respective authorities to conceal their abstention attempt. Judge Kunkle, lied as he argued that he had set the date for status and had not set it for trial; which clearly contradicts all hard copy paperwork. ASA Pavlus argued that the date was set for trial because he could not lie about the reason why everybody had shown up; and moreover, ASA Pavlus had been discussing trial preparations outside the courtroom with non-conspirator Attorney Ms. Cotter and the Petitioners. ASA Pavlus who had initially told the defense that the prosecution was ready for trial outside the courtroom changed their status to not-ready for trial inside the courtroom before Kunkle and requested

a continuance. Therefore, halting Judge William Kunkle, ASA Paul Pavlus, and Attorney David Daudell's attempt to try the January 27th, 2010 criminal trial proceedings with Mr. Simmons in abstention.

70. This petition is being filed because of Petitioners' concern that the false conviction of Mr. Simmons was influenced by Michele Simmons' employee relationship with the Illinois Cook County Circuit Courts (ICCCC) as an Illinois Cook County Circuit Court Criminal Judge. Petitioners believe that on the 1/27/10 criminal trial date that David Daudell tried to trick the Petitioners into not attending court on 1/27/10 and conspired with Judge William J. Kunkle, ASA Paul Pavlus, and Michele Simmons to try the Simmons criminal case with Mr. Simmons in abstention in order to gain an uncontested conviction against Mr. Simmons. Therefore, William J. Kunkle, David Daudell, Paul Pavlus, Timothy C. Evans, Anita Alvarez Julie A. Garmon, Lester Barclay, Ursula Gulley, and Michele Simmons has *"interest"* in the investigation and outcome of the proceeding See *55 ILCS 5/3-9008*.

■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

## Criminal Judge William J. Kunkle with Co-Conspirers at March 19th, 2010 Criminal Trial Proceeding Commit Obstruct of Justice

71. At the March 19th, 2010, '*People v Frankie Simmons*'- *09-6-007235,* criminal bench trial, Judge William J. Kunkle, again may have committed '*conspiracy to obstruct justice*' and '*obstruct of justice*' in his questionable and bias pre-trial instructions favoring the prosecution. Judge Kunkle forbid Mr. Simmons from mentioning IDCFS in anyway less otherwise be held in contempt of court and thrown in jail. Judge Kunkle when on to instruct defense counsel, David Daudell that in no way could he have IDCFS and their findings mentioned or referred to during the course of the criminal trial. *(See: 'Judge Kunkle's Trial Irregularities').* Judge Kunkle, in his closing remarks before rendering his verdict of guilty, stated:

"that since there was no mention of IDCFS during the trial and in the absence of IDCFS Testimony, findings and reports at trial, I have no choice but to go with the recommendations of the Cook County State's Attorney Office and find the Defendant (Petitioner Frank Simmons) guilty as charged of Domestic Battery".

72. After the verdict, the courtroom cleared, and it was just Judge Kunkle and Frank Simmons, shocked, still sitting in table. Kunkle demeanor totally changed, he is smile from ear to ear as he is grabbing up his belongings. Frank Simmons then asked him: "So, you just made me a criminal huh? Kunkle smiled and said; "Well you can always appeal!", as he scurried from the bench to his chambers.

73. This petition is being filed because of Petitioners' concern that the false conviction of Mr. Simmons was influenced by Michele Simmons' relationship to Judge William Kunkle, Anita Alvarez and Tim Evans, Judge Kunkle intentional gave erroneous pre-trial instruction to the court to prevent the mention and/or existence of the IDCFS Report from court record; since the allegations were found to be "Unfounded", prosecution under those allegations is baseless, thus the reason to suppress and conceal the report and/or simply force Mr. Simmons to plead guilty to avoid the more difficult complications with managing

28

the suppression and concealment of evidence at trial and the associated unknown risks. The intentional suppression and concealment of evidence is a crime. On March 19, 2010, the Guardian-at-Litem, Mr. Lester Barclay revealed to the Petitioner that he had definitive knowledge that the March 19, 2010 criminal trial was going to be a set-up; that Mr. Simmons just should plead guilty (§ 74-76). The extent of Mr. Barclay's involvement in the conspiracy and/or role is yet to be determined, however, having knowledge of a crime and the solicitation other(s) to go along with it; look the other way, constitutes aiding and abetting the crime of conspiracy. Therefore, Attorney Lester Barclay is a conspirator. While Attorney, David Daudell's could argue his missteps are the result of 'Ineffective Counsel', Workman v. Tate F.2d 1339 (6th cir. 1992) however, that assumption would be 'unreasonable', since Attorney David Daudell did none of the 'reasonable' things Mr. Simmons requested i.e. subpoena IDCFS for trial; write motion to reduce monthly child support; is a big-time downtown Wacker Dr. attorney with over 30 years practicing law un his belt. Downtown office the evidence in its entirety is exonerating. Co-conspirator Attorney David Daudell in summation was a complete fraud in his service to Mr. Simmons in both his criminal and civil courts proceedings. Therefore, William J. Kunkle, David Daudell, Paul Pavlus, Timothy C. Evans, Anita Alvarez Julie A. Garmon, Lester Barclay, Ursula Gulley, and Michele Simmons has **"interest"** in the investigation and outcome of the proceeding See 55 ILCS 5/3-9008

## Guardian-At-Litem Lester Barclay - Informs Petitioners of The Conspiracy

74. On the morning of March 19, 2010, en route to criminal trial with Fred Simmons, Frank Simmons received a strange cell phone call over speaker from Guardian-At-Litem, Lester Barclay. Mr. Barclay, told Mr. Simmons, quote:

"You need to go ahead and plead guilty! The criminal trial is just a set-up! It has already been decided! It's a set-up! You cannot win! It is because of her job! You are now going to beat these folks!"

75. Allege co-conspirators, Defense attorney David Daudell and ASA Paul Pavlus also told Frank Simmons that "it did not matter that he didn't do anything, it is about protecting her (Judge Michele Simmons) job" when at the Bridgeview Courthouse outside the courtroom before the Criminal hearing on July 10, 2009 (§ 99) ('See: Judge Brownfield's Irregularities'). As Michele Simmons, co-conspirators David Daudell, Judge Kunkle, ASA Paul Pavlus; and are each steadfast in preventing IDCFS' 'People v. Frank Simmons' SCR #1868829-A Report' from becoming part of any official court record; as was Guardian-At-Litem, Lester Barclay at the Child Custody Trial before the Honorable Judge Edward Jordan on March 28th, 2011; telling Mr. Simmons that he was making a fool of himself and not to let IDCFS testify at trial. (See: 'Guardian-At-Litem, Lester Barclay Irregularities')

76. It is 'reasonable' from the statements made by Attorney Lester Barclay on the morning of March 19, 2010, that he is stating without any doubt, that there is a 'conspiracy' afoot to falsely convict Mr. Simmons of domestic battery. It is also equally 'reasonable' to assume, from his unsolicited comments,

that Attorney Barclay has knowledge of some, if not all the conspirators in *People v Frankie Simmons* and knowledge to the extent of their participation, including possibly his own (§ 74-76). Therefore, Guardian-At-Litem, Lester Barclay and Barclay, Dixon & Smith, P.C has **"interest"** in the investigation and outcome of the proceeding *See 55 ILCS 5/3-9008*. (*See:* 'Guardian-At-Litem, Lester Barclay Irregularities')

## Criminal Defense and Divorce Counsel - David Daudell Commits 'Conspiracy to Obstruct Justice' and 'Obstruction of Justice'

**77. Honorable Judge Edward Jordan offers to testify on behalf of Petitioner to the Illinois Judicial Review Board**
Honorable Judge Jordan on record stated that Frank Simmons' defense and divorce attorney, David Daudell was of shady character and should Mr. Daudell approach the Mr. Simmons for additional money immediately file a complaint with the Illinois Judicial Review Board and he (Honorable Judge Jordan) would personally stand with the Petitioner and testify on his behalf.

78. It is *'reasonable'* to assume from the Honorable Judge Edward Jordan's statement above, that he considers Attorney Daudell; in some way, intentionally did not serve and/or act in the best interest of his client, Frank Simmons. Attorney David Daudell represented Frank Simmons before Judge Jordan from June 2009 to March 2010. Therefore, it is *'reasonable'* to assume that the Honorable Judge Jordan had ample time to observe and evaluate the character and performance of Attorney Daudell to form his opinion. However, it cannot be overlooked that the Illinois Judicial Review Board sanctions Judges and not attorneys, therefore it is equally *'reasonable'* to assume that the Honorable Judge Jordan has identified serious ethical faults in the character and integrity of Judge Michele Simmons which, warranty sanctions and/or attention by the Illinois Judicial Review Board. Moreover, it could be, but not limited to, a person(s) of authority within the ICCCC Judiciary orchestrate supervised unethical events within Cook County Domestic Court concerning *'Michele M. Simmons v. Frank Simmons'* that are beyond his control. The Honorable Judge Raul Vega also questions the ethics of the divorce decree ruling in *'Michele M. Simmons v. Frank Simmons'* calling it *"unreasonable"*. Whether either and/or all, the Honorable Judge Edward Jordan's personal offering to stand with and testify on behalf of Frank Simmons before the Illinois Judicial Review Board is well received by the Petitioners. Judge Edward Jordan's statements were always made in the presence of opposing counsel, Attorney Julie Garmon and her client Michele Simmons as Mr. Simmons represented himself Pro Se.

79. In June 2009, Mr. Simmons hired Attorney David Daudell to represent him both criminally and divorce, (*People v Frankie Simmons, 09-6-007235*) and (*Michele M. Simmons vs. Frank Simmons, 09-D-005497*) respectively. Attorney Daudell could be termed as a seasoned attorney, law offices downtown on Chicago's Wacker Drive with over 30 years' experience practicing law. Mr. Daudell asked Mr. Simmons in their first interview if his wife, Michele was *"connected"*. Mr. Simmons replied saying that she could be considered "connected" in the criminal justice system. Though the question was thought to be

strange, Frank Simmons disregarded it at the time. Mr. Daudell, as counsel to Mr. Simmons, constantly lied to and/or intentionally attempted to deceive Mr. Simmons throughout his representation in both criminal and divorce proceedings.

In example:

1) On February 23rd, 2010 at Divorce Court Attorney Daudell told Mr. Simmons that he had requested and would have of the IDCFS their records and findings concerning *People v. Frank Simmons*; but he did not;

2) In March 19th, 2010, Attorney Daudell said that he had subpoenaed IDCFS, but, he did not; (§ 71, 63)

3) On February 23rd, 2010 at Divorce Court, Attorney Daudell promised Mr. Simmons that he would have IDCFS at his criminal trial to testify; but, he did not;

4) In June 2009, Mr. Daudell advised Mr. Simmons, not to contact IDCFS or return their phone calls;

5) On about November 8th, 2009, against the insistence of Mr. Simmons, Attorney David Daudell refused to motion for 'Substitution of Judge' to avoid the *'Conflict of Interest'* even after Mr. Simmons informed Mr. Daudell that Kunkle was a very good friend of Michele Simmons's from the CCSAO.

6) On February 23rd, 2010 at Divorce Court, Mr. Simmons presented his recently received copy of from IDCFS findings to David Daudell whom refused to read it or touch it. Therefore, Frank Simmons read to David Daudell the following contents from the letter IDCFS stated:

*"After a thorough evaluation, we have determined the report to be "Unfounded". This means that credible evidence of child abuse or neglect has not been found. If you believe that the report was falsely filed, you must within ten (10) days request in writing that the report be retained."*

7) On March 19, 2010, criminal trial date, David Daudell refused to present the official IDCFS Letter, IDCFS SCR #1868829-A at criminal trial.

8) On March 19, 2010, criminal trial date, David Daudell refused to present the June 7th, 2009 photos taken by Frank Simmons of alleged victim, SON#1 at criminal trial.

9) On March 19, 2010, criminal trial date, David Daudell refused to present the June 7th, 2009 audio recording of co-conspirators Michele Simmons and Ursula Gulley.

10) On January 27th, 2010, *'People v Frankie Simmons'*- **09-6-007235,** criminal trial date, co-conspirators Judge William J. Kunkle, Mr. David Daudell, ASA Paul Pavlus, and Michele Simmons unsuccessfully conspired to conduct criminal trial proceedings with Mr. Simmons in abstention (§ 64) (*Hall v. Washington, 106 F. 3d 742 (7th Cir. 1997)*; and therefore, may have committed *'conspiracy to obstruct justice'* and *'obstruct of justice'*.

11) At July 10, 2009 Criminal Court Hearing- Bridgeview Courthouse, Attorney David Daudell and ASA Paul Pavlus told Frank Simmons that "it did not matter that he didn't do anything wrong, it is about protecting her (Judge Michele Simmons) job *('see: Judge Brownfield's Irregularities')*.

12) On March 19, 2010, the day of his criminal trial, Mr. Daudell tells Frank Simmons that he never subpoenaed IDCFS and that he did not need them at trial

31

13) On March 19, 2010, the day of his criminal trial, Attorney Daudell outside the court room, yells loudly to ASA Paul Pavlus saying: "Can you believe this f*cking jag-off, wanted me to subpoena IDCFS".

14) Mr. Daudell refused to petition to the court on behalf of Mr. Simmons for child custody and/or petitioned for *reasonable* divorce and child support & maintenance liability.

80. Clearly Attorney David Daudell's actions and/or inactions were intentionally designed with one prominent purpose; to conceal and suppress IDCFS' exonerating findings from Mr. Simmons; at trial; and from official court record. Therefore it is 'reasonable' to assume that Attorney David Daudell's and ASA Paul Pavlus' July 10, 2009 comments to Frank Simmons that it did not matter Mr. Simmons didn't do anything wrong, it is about protecting Michele Simmons' job, were true. It is *reasonable' to assume* Attorney Daudell, ASA Pavlus, and Judge William Kunkle intentionally conspired together to sabotage Mr. Simmons' criminal defense in order to give fictitious validity to Michele Simmons' false allegations to protect her job and the interest of the ICCCC. The conspirators can be accused of *'conspiracy to obstruct justice'* and *'obstruction of justice'*, for suppressing and/or concealing IDCFS's findings from Frank Simmons and at criminal trial; thus, denying Frank Simmons equal protection under the law.

81. Mr. Daudell's actions or inactions are too numerous and clearly show intent as oppose to a mistake in judgment which could result in 'Ineffectual Counsel'. Attorney Daudell's mistakes encompass the following prior cases having lower court rulings overturned for the reasons shown due to 'Ineffectual Counsel' are as follows:

Counsel did not interview witnesses (*Illinois Supreme Court – People v. Moone*);

Counsel failed to investigate evidence that would have established a foundation for certain testimony (*Illinois Supreme Court – People v. House*).

Counsel relied on defense that was unavailable, failed to object to inadmissible evidence and appeared to be uncertain of the precise charge (*People v. Kozlowski*).

## Michele Simmons Testifies to the Events of June 6th & 7th, 2009 at Child Custody Trial on March 28th and 29th, 2011

82. On March 28th and 29th, 2011 at the Child Custody Trial; under Pro Se cross-examination, Michele Simmons testified, under oath before the Honorable Judge Edward Jordan that the following details of events on the morning of June 7th, 2009 and the evening of June 6th, 2009 to be an accurate and factual description (§ 36-37; 90-95), and were as follows:

83. On June 7th, the conversation between the adults that morning was not about physical abuse of SON#1; it was about do we stay together as a married couple or divorce and nothing else. That morning, Michele Simmons walked into the home's 1st floor kitchen near the family room where Frank Simmons was already standing and asked if he would join her at the kitchen table to discuss their marriage. Michele

Simmons opened by stating that she would be willing to try to work things out again and that she was willing to go back to marriage counseling if he (Frank Simmons) would be willing to join her. Frank Simmons then told Michele that their marriage could never work; not until she stopped the physical and verbal abuse of him.

84. NBC News National News Correspondent Jeff Rossen of the investigative series 'The Rossen Reports' reported in his 10/03/14 on domestic violence states that 20% of all domestic abuse victims are men; 1 in 7 men are abused by a partner. Katie Rae Jones CEO of The National Domestic Abuse Hotline states many men and women, suffer in silence. When men reach-out for help from us they often say they tried to reach-out to someone, or their co-workers.

85. Michele Simmons then quietly stood-up, walked out of the kitchen and she returned a few minutes later, in a violent, aggressive tirade, abusively yelling, cussing, beating and kicking walls and doors and screaming while Mr. Simmons stayed quietly locked in the bathroom:

"Get the f*ck out of this house....You stomped in SON#1's chest and scratched him on the neck! I will make sure you never see these kids again! I want you the f*ck out of this f*cking house right now or I will make sure you never see these kids again!' I want your motherf*cking ass out of this house now! Get the f*ck out now! You cannot afford this house on your own, with your salary anyway, so why don't you leave the f*ck right now! You admitted that you don't want to stay married to me! That you don't love me! So why are you here! So why don't you just get the f*ck out right now?! Leave or, I am going to call the police!" You stomped in SON#1's chest and scratched him on the neck!" "I am calling the police to have you f*cking thrown-out!"

86. Michele then called the Illinois Cook County State's Attorney (CCSA), Anita Alvarez, a long-time personal friend and former co-worker at the Cook County State's Attorney Office (CCSAO). Mr. Simmons noticed his two minor sons, SON#1 and SON#2 huddled in the downstairs playroom, solemn, looking worried and confused. Frank Simmons when to his sons, kneeled-down and held them close in each arm. Frank told them not to worry about all the yelling upstairs by their Mom. This is between your Mom and me. Frank told them it is nothing, it's not you guy's fault don't even think it. Your dad loves you guys very, very much. He told them to stick together no matter what happens and that they should never try to hurt one another again. Frank, then kissed each of them on the forehead.

87. With his cell phone Mr. Simmons took photos of SON#1 (see: Hearing Transcript: pg.21, ln.4-7.). Frank Simmons proceeded again to the downstairs bathroom where he securely locked himself in to avoid possible physical abuse from Michele Simmons. No sooner than Mr. Simmons locked the bathroom door, Michele Simmons was outside the door pulling and twisting the bathroom door knob, loudly banging and kicking on the bathroom door and wall, continuing to cuss and yell, demanding that Frank come out and confront her (§21-25) (see: Hearing Transcript: pg.21, ln.4-7.). However, Mr. Simmons remained in the bathroom until the Olympia Fields Police arrived and continued to audio record Michele Simmons as his brother, Fred Simmons remained on the phone. The audio recording continued from that morning and into the afternoon after Frank Simmons arrest (§ 90). Fred Simmons retrieved the cell phone at the home from Michele Simmons that afternoon, with his call still connected and the phone

still recording on the kitchen counter (see Exhibits: E & F: '06/07/09 Audio Recording' and '06/07/09 Cell-Phone Call Detail' respectively).

88.   On March 28th and 29th 2011 Child Custody Trial, Michele testified that she arrived home shortly after Mr. Simmons arrived at home from the cigar shop. This is also confirmed in July 10th, 2009, Hearing Transcript pg.40, ln.7-14; pg.38, ln.2-24. In her Hearing testifies that she arrived Mr. Simmons arrived at home at about 9:30PM on the evening of June 6th, 2009, sat on the sofa and listened to his three children laughing and playing in their upstairs bedrooms for a few minutes; then he heard violent noise and a fight between his two sons upstairs. Older son, SON#1, upset with his younger brother, SON#2, deliberately stepped-on and tried to crush his testicles. That evening, Frank Simmons no way harmed SON#1; he only lectured SON31 and SON#2 first and later while at the dinner table, all three of his children. The lecture total, no less than 1 ½ hours about not seeking to hurt one another and especially when they think an adult is not home.

89.   Michele interjected comments during the lecture, personally reprimanding both SON#1 and SON#2 for fighting. She continued to interject comments throughout the evening's lecture. Moreover, Michele Simmons was the last parent to see and speak with the children before bed that evening. She personally took the children upstairs to shower after dinner that evening. Michele spoke with SON#1 for over an hour in his bedroom while DAUGHTER#1 and SON#2 were taking showers and later when to bed. Michele Simmons did not confront Mr. Simmons about physical violent against their minor son that evening. There was no abuse by Frank Simmons. The children were not crying nor holding their heads and/or chest, wrenching in pain of any kind as they listened as if they were bored.

## Michele Simmons and Ursula Gulley, Co- Conspirators AUDIO RECORDED

90.   From the Olympia Fields Police Department, Mr. Simmons called Fred Simmons. Fred Simmons advised Mr. Simmons that he was still patched-in to his cell-phone on kitchen counter at his residence. Mr. Simmons and F. L. Simmons both listened in real-time to the conversation between, Michele Simmons, Ursula Gulley (mother of Michele); and minor son SON#1 in the kitchen. Michele yelling at SON#2 to get upstairs while she and Ursula Gulley coerced SON#1 into fabricating a lie. One could clearly hear the voices of Michele Simmons and Ursula Gulley, telling SON#1 to say if anyone ask, say that your Dad stomped in your chest with his foot. Also, you can clearly hear SON#1 telling both his mother, Michele Simmons and grandmother, Ursula Gulley that "Dad did not stomp in my chest. My chest doesn't hurt!" At the July 10, 2009 Hearing, Michele Simmons testified that her mother, Ursula Gulley arrived at the Simmons Residence shortly after Mr. Simmons was taken into custody on June 7th, 2009 (Exhibit G).

91. Mr. Simmons listened-in a while longer before he was taken to lock-up. Fred Simmons retrieved the recording cell phone on the afternoon of June 7th. In June 2009, the June 7th audio recording (Exhibit E) was presented to defense counsel David Daudell whom listened; however, he did not use the audio recording nor did he use June 7th, 2009 photos (Exhibit D) of the alleged minor victim taken by Mr. Simmons. Judge Jordan declined to allow the Court to hear the audio recording due to uncertainty in legal ramification at the March 28th and 29th 2011 Child Custody Trial.

92. The Petitions alleges that on 07/07/09 and after, co-conspirators Michele Simmons and Ursula Gulley jointly engaged in the act of coercion of an innocent minor, SON#1 to lie and later commit perjury, in addition to, Mail & Wire Fraud. Michele Simmons and Ms. Gulley co-conspired together to commit these crimes and are therefore *co-conspirators*. Therefore, Michele Simmons and Ursula Gulley has *"interest"* in the investigation and outcome of the proceeding *See 55 ILCS 5/3-9008*.

## Michele Simmons Conceals Mr. Simmons IDCFS Letter and Mail & Wire Fraud

93. Michele Simmons concealed Also on 02/23/10, finally gave Mr. Simmons his official IDCFS Letter that she had withheld since September 2009. Since July 2009, was by court order by the Honorable Judge Edward Jordan, that Michele Simmons was to provide Mr. Simmons his personal mail on court appearance dates in a timely fashion. The Petitioners allege that Attorney Julie Garmon knew of IDCFS findings of no abuse and had knowledge of IDCFS official letter to Michele, in September 2009', yet Julie Garmon jointly conspired with Michele Simmons to withhold this information from Domestic Court and Mr. Simmons and continued to outright falsely call and label Frank Simmons an abuser in domestic court proceedings; which is an act of *'Furtherance'* (§ 17). Attorney Julie Garmon was the liaison of Michele Simmons to co-conspirator, Attorney David Daudell. The Petitioners note that Michele Simmons and Attorney Julie A. Garmon had provided Mr. Simmons his personal mail at court dates before and after September, had not received the IDCFS Letter until 2/23/10. Therefore, that Michele Simmons and Attorney Julie A. Garmon has *"interest"* in the investigation and outcome of the proceeding *See 55 ILCS 5/3-9008*.

94. The Petitioners allege that in July 2009, Ms. Simmons fraudulently switched Mr. Simmons personal AT&T Email Account into her name. Mr. Simmons notified AT&T and was told it was no longer his account; therefore, he could not provide Mr. Simmons with account details. However, he advised Mr. Simmons that the only way an account could be changed is by authorization of the account holder or by court order from a judge. Mr. Simmons was given a **case# 196188583** by the AT&T Service Representative. Michele Simmons is a judge who has shown little reservation in abusing her position of authority and allege co-conspirator, Ursula Gulley is an AT&T Business Office Manager who is responsible for account management and changes. Attorney Julie A. Garmon stated that Ursula Gully had assisted in moving Frank Simmons account while in Domestic Court where the issue was the subject

of several court motions. Attorney Daudell acknowledged Michele Simmons committed 'mail and wire fraud' (§ 93), but refused to pursue it on behalf of the Petitioners. The Petitioner argue that the email account contains confidential US Defense Department correspondence, in addition to; legal agreements, such as, None Disclosure Agreements, Technology Transfer, patents, and other agreements with federal agencies and corporations. In divorce filings, Michele Simmons disclosed that she had accessed some of these confidential emails and files from the corporate names mentioned in Attorney Julie Garmon's court motions.

95. The Petitioners allege that Michele Simmons with the assistance of Ursula Gulley, who is employed at the AT&T Business Office, fraudulently changed Frank Simmons AT&T Email Account into Michele Simmons and locked him out of his own email; which constitutes Federal Mail & Wire Fraud. Therefore, co-conspirators Attorney Julie A. Garmon, Attorney David Daudell, Michele Simmons and Ursula Gulley has *"interest"* in the investigation and outcome of the proceeding *See 55 ILCS 5/3-9008*.

## Olympia Fields Police Irregularities

96. Moreover, on a scheduled court ordered day to pick-up belongings escorted by Olympia Fields Police Officer, S. Barry (Star #10, also one of the arresting officers on 6/7/09); Michele Simmons physically assaulted Mr. Simmons in the presents of four witnesses, with her fists, punching him three-times in the body and pushing him into the kitchen counter-top before Officer S. Barry physically restrained her. Due to the brutality, Officer S. Barry (Star #10) asked Mr. Simmons if he wanted to press charges for assault, which Mr. Simmons responded, "Yes!" Officer S. Barry provided Mr. Simmons with Police Report # 09-3908 (§ 22, 104). However, later, Olympia Fields Police Chief Jeff Chudwin arrived at the scene and told Mr. Simmons that he personally stopped Officer S. Barry from filing the police report for assault.

97. Michele Simmons expressed and the police officers acknowledged their working relationship on with Judge Michele Simmons and the Markham 6-District, Cook County Circuit Court Criminal Courthouse; When the police officer personally witness just some of the physical abuse of Mr. Simmons by Michele Simmons he wanted to press charges himself, he could not believe the high level of anger within a few seconds. Mr. Simmons agreed to press charges because he thought finally there was someone that could help him. However, Police Chief, Jeff Chudwin cut Mr. Simmons' lifeboat. The Olympia Fields Police has bias as to who they will assist not; Therefore, the Olympia Fields Police Department has *"interest"* in the investigation and outcome of the proceeding *See 55 ILCS 5/3-9008*.

98. This petition is being filed because of Petitioners' concern that the arrest of Mr. Simmons was influenced by Michele Simmons' relationship at Markham 6-District, Cook County Circuit Court and the Cook County State's Attorney, Anita Alvarez. Petitioners believe that had Michele Simmons not been a

36

Circuit Court Judge and/or with the personnel support of the Cook County State's Attorney Ms. Alvarez, Mr. Simmons would not have arrested and/or charged. Therefore, the Olympia Fields Police Department has *"interest"* in the investigation and outcome of the proceeding *See 55 ILCS 5/3-9008*.

## Hearing Judge Brownfield Irregularities:

99. On July 10, 2009, at the Bridgeview Courthouse Criminal Hearing, presiding Criminal Cook County Circuit, Judge Gary L. Brownfield (retired), Judge Michele Simmons and ASA Paul Pavlus met privately in the chambers of Judge Brownfield for almost 2-hours prior to conducting the start of the hearing. Meeting in the absence of the Petitioners and defense counsel, is clearly ex parte communication with hearing Judge Brownfield is improper and not allowed.

100. Judge Gary L. Brownfield, verbally chastised, ASA Pavlus on record, for falsely stating, demonstrating, and implying in witness stand direct examination of minor, SON#1, that Mr. Simmons stomped in the chest of SON#1 after SON#1 demonstrated for the court that his father, Frank Simmons did not stomp in his chest (see: Exhibit C: July 10, 2009, *People v Simmons* Hearing Transcript pg. 113, Ln 6). In Judge Gary L. Brownfield reprimand of ASA Paul Pavlus states:

"Mr. Simmons did not stomp in his son's (SON#1) chest. I had SON#1 step down and demonstrate for the court what was done, and it certainly wasn't done the way you (ASA Pavlus) just did it, okay. If you're going to argue to me, don't try to change things, alter it, and make it different than what it was, because he described it and he showed me right there. He showed all of us! (§ 45-49):

101. Also, on July 10, 2010, prior to the hearing, outside the courtroom, Mr. Daudell and ASA Paul Pavlus told Mr. Simmons, "it did not matter that you (Mr. Simmons) didn't do anything, it is about protecting her (Judge Michele Simmons) job". This statement was made after Mr. Simmons posed the offer to Michele Simmons, based upon her false allegations, to drop criminal charges and just focus on the divorce. In post Hearing conversation at the bench in the presence of Mr. Simmons, **Judge Brownfield** advised both, defense attorney David Daudell and ASA Pavlus that he saw and heard nothing during the course of the hearing that would even come close to Domestic Battery and that they needed to come up with something else to charge Mr. Simmons.

## FBI and DCFS

102. In the winter of 2009 – 20010, with his increasing mistrust of the Cook County Justice System, Mr. Simmons did two things. Mr. Simmons contacted both the Federal Bureau of Investigations (FBI) and the Illinois Department of Children and Family Services (IDCFS).

## FBI

103. Mr. Simmons contacted and met with the Federal Bureau of Investigations (FBI) in the winter of 2009-2010. Mr. Simmons told FBI Agents that his wife, Judge Michele Simmons filed false abuse charges against him and that he felt his attorney, David Daudell, was working with his wife (§ 85-87), Anita Alvarez and Tim Evans to convict him for a crime never committed and that they were trying to take his children away from him. The agent felt it strange attorney Daudell had asked Mr. Simmons if his wife was connected and did she know people. The FBI stated that they were starting a file and requested that Mr. Simmons to keep them informed about his case. However, they advised that for the FBI to act would also depend upon the outcome of his criminal trial before Kunkle. Frank Simmons has not contacted the FBI since then. **However, it is Mr. Simmons hope that this motion contains ample detail information required for an FBI Investigation and that the US Attorney prosecute the conspirators of this crime to the fullest extent of the law.**

## IDCFS

104. Against the wishes of counsel, Mr. David Daudell (§ 85-87), Mr. Simmons concerned about losing his children, contacted IDCFS in October and November of 2009 and spoke with IDCFS Administrator, Ms. Linda Everette Williams. *(MR. SIMMONS CONTACTS THE IDCFS)* Ms. Linda Everette Williams advised Mr. Simmons that had he committed a domestic violent crime, IDCFS would have had him arrested some time ago. Ms. Williams also advised Mr. Simmons that he should have already received a letter from IDCFS, stating their findings around 09/23/09. However, Ms. Williams verified that for some reason IDCFS Letter had been sent to the address of Michele Simmons, who concealed it in the interest of obstruction of justice. IDCFS mailed a replacement copy of the original letter which was received by Mr. Simmons in February 2010; which was after the January 27th, 2010 Criminal Trial Date. (*See: Michele Simmons – Mail & Wire Fraud*)

## Conclusion:

This Court has seen that it is 'reasonable' to assume that Michele M. Simmons, from the evidence provided, has a history of violence abuse against Frank Simmons and routinely threatened Frank Simmons with using the authority of her position as Cook County State's Attorney and later as a Cook County Circuit Court Judge, to bring false allegations of abuse in an effort to control and to both physically and verbally abuse Frank Simmons (§ 21-25; 90-94). Therefore, Michele M. Simmons act on June 7th, 2009 was a premeditated malicious criminal act of violence and abuse audio (Exhibit E). This Court has seen that it is *'reasonable'* to assume Michele Simmons continued her abuse of Frank Simmons even after his arrest and conviction in an attempt to gain a *'second bite at the apple'* (§ 30, 17) which prompted Frank Simmons to inform the Honorable Judge Raul Vega on August 1, 2012, (§ 17) that he would not dare come close to his prior home residence unless he was personally escorted by the Olympia Fields

Police which prompted applause from a number of Cook County Sheriffs and clerks gathered in the court room in his support. Therefore, Michele Simmons has **"interest"** in the investigation and outcome of the proceeding *See 55 ILCS 5/3-9008*.

This Court has seen clearly the allegations of violence made by Cook County Circuit Court Associate Judge Michele M. Simmons of SON#1 by Frank Simmons on June 7th, 2009 were "False", "Unfounded", and "Malicious" as per IDCFS' findings in IDCFS' Report SCR #1868829-A (Exhibit A & B) (§ 104); which, per Illinois State Law, is a crime to report false claims of abuse pursuant to Rules 300, Section 300.30. We see that Michele Simmons was unsuccessful in her attempts to coerce IDCFS into changing their findings (§ 104). This Court has seen that it is *'reasonable'* to assume Michele Simmons and Ursula Gulley coerced minor SON#1 to commit *'perjury'* in addition to, but not limited to, *'conspiracy to obstruct justice'* and *'obstruct of justice' false evidence; evidence tampering; and suppression and concealment of evidence* (Exhibit E). This Court has seen that it is *'reasonable'* to assume Michele Simmons with the assistance of Ursula Gulley, whom is employed in the AT&T Business Office, fraudulently commandeered Frank Simmons personal AT&T Email Account into Michele Simmons name and locked him out of his own email; which constitutes Federal Mail & Wire Fraud. This Court has seen that it is *'reasonable'* to assume that co-conspirator, Attorney David Daudell continued to use this commandeered account to communicate with co-conspirator Michele Simmons despite being provided a new email address and informed by Frank Simmons for months that his email account had been fraudulently switched Michele Simmons.(Exhibit K) . This Court has seen that it is *'reasonable'* to assume that Attorney Julie Garmon knowingly conspired with Michele Simmons and Attorney David Daudell to suppress and conceal evidence, IDCFS's findings, and Mail & Wire Fraud. Therefore, Judge Michele M. Pitman (formally: Michele Simmons), Ursula Gulley, Attorney David Daudell, and Attorney Julie Garmon has **"interest"** in the investigation and outcome of the proceeding *See 55 ILCS 5/3-9008*.

This Court has seen that it is more than *'reasonable'* that alleged conspirator, Chief Judge Timothy C. Evans conspired with Judge Michele Simmons, CCSA Anita Alvarez (§ 30, 45-49), defense counsel Attorney David Daudell (§ 77-81) , and others (*now known as: conspirator(s) and/or co-conspirator(s)*), in order to shield Michele Simmons, his friend and subordinate judge (§ 51) from possible prosecution and avoid, rather than face the possibility of negative backlash resulting from Michele Simmons, a Cook County Associate Judge, abusing her position of trust and authority to perpetrate a criminal act and affect her divorce. It is clear from the body of exonerating evidence provided herein, that a conviction would only have been likely with the assistance of conspirator, Attorney David Daudell. Attorney David Daudell stole, lied, and deceived Frank Simmons, in addition to, conspiring to suppress and conceal medical and IDCFS's Reports and other exonerating evidence from court records with ASA Paul Pavlus, Judge William J Kunkle, and others (§ CCSAO: 45-49; Evans: § 56-59; Kunkle: § 31, 51, 62-73; Carr: 13-14, 53; 55; Brownfield: § 99-101; Daudell: § 77-81; Michele Simmons: § 21-25, 99-101). To avoid a judicial

conflict of interest (§ 28-29, 30-31), clearly it would have been *'reasonable'* for Judge William J. Kunkle to have recused himself in *'People v Simmons'* and/or Chief Judge Timothy C. Evans request that Kunkle step-aside in the interest of avoiding impropriety (§ 77-81 as Chief Judge Evans did in the *'Koschman Case'* as reported by *Sun-Times Staff Reporters: Chris Fusco and Tim Novak on December 17, 2012* article (Exhibit: I). Therefore, Chief Judge Timothy C. Evans, CCSA Anita Alvarez, ASA Paul Pavlus, Associate Judge William J. Kunkle, Associate Judge John Thomas Carr, Attorney David Daudell, Attorney Lester Barclay, Attorney Julie A. Garmon, and Associate Judge Michele M. Pitman (formally: Judge Michele Simmons) has *"interest"* in the investigation and outcome of the proceeding *See 55 ILCS 5/3-9008*

This Court has seen that it is *'reasonable'* to assume that the suppression and concealment of all medical and IDCFS's Reports by the conspirators, along with gaining a criminal conviction, would give substance to Michele Simmons' fabricated allegations; but, also shield the ICCCC from possible judicial scandal and misconduct (§ 51-58). Moreover, denying the existence of IDCFS's findings gives the false impression that IDCFS was never involved in *'People v. Frank Simmons'* which is even more *'unreasonable'* assume when it is known, that by Illinois State Law, the IDCFS is required to investigate all allegations of abuse involving a minor.

This Court has seen that it is *'reasonable'* to assume on the January 27th, 2010 trial date that Cook County Criminal Court Associate Judge William J. Kunkle conspired, with co-conspirators, defense attorney David Daudell and ASA Paul Pavlus unsuccessfully attempted to try *'People v. Frank Simmons'* with Mr. Simmons in abstention in order to secure an uncontested conviction (§ 63-70). This court will see that it is *'reasonable'* to assume that on the March 19th, 2010 trial date, Judge Kunkle's pre-trial instructions to the defense and the court was in the interest of *'concealment and suppression'* of evidence; which, he conspired with co-conspirators, defense attorney David Daudell, ASA Paul Pavlus, and others to achieve this *'obstruction of justice'* (§ 71-73). Therefore, Chief Judge Timothy C. Evans, CCSA Anita Alvarez, ASA Paul Pavlus, Associate Judge William J. Kunkle, Associate Judge John Thomas Carr, Attorney David Daudell, Attorney Lester Barclay, Attorney Julie A. Garmon, and Associate Judge Michele M. Pitman (formally: Judge Michele Simmons) has *"interest"* in the investigation and outcome of the proceeding *See 55 ILCS 5/3-9008*

This Court has seen that it is *'reasonable'* to assume from the comments made to the Petitioners by co-conspirator, Guardian-at-Litem Attorney Lester Barclay on the morning of March 19, 2010, that Mr. Barclay expressed definitive knowledge of a conspiracy to convict Frank Simmons prior to trial for domestic battery. Therefore, It is also equally *'reasonable'* to assume from his unsolicited comments, that Attorney Barclay has knowledge of some, if not all the conspirators involved in *People v Frank Simmons* and knowledge to the extent of their participation, including possibly his own (§ 74-76). The

extent of Mr. Barclay's involvement in the conspiracy and/or role is yet to be determined, however, having knowledge of a crime and the solicitation of other(s) to go along with it and/or look the other way, constitutes aiding and abetting the crime of conspiracy Therefore, Guardian-At-Litem, Lester Barclay and Barclay, Dixon & Smith, P.C has *"interest"* in the investigation and outcome of the proceeding *See* **55 ILCS 5/3-9008**.

This Court has seen that it is *'reasonable'* to assume that co-conspirator, Cook county Domestic Court Associate Judge John Thomas Carr conspired with co-conspirator, Chief Judge Timothy C. Evans and/or others in a premeditated criminal act of suppression, levied *'unreasonable'* domestic financial liability upon Frank Simmons to silence him in both criminal and domestic court proceedings; thus depriving Frank Simmons 'equal protection under the law' throughout the extent of his criminal trial proceedings and after from appeal, in an act of, but, not limited to, *'conspiracy to obstruct justice'* (§ 13-14, 53, 55). This Court has seen that it is *'reasonable'* to assume that the Honorable Judge Edward Jordan and the Honorable Judge Raul Vega were truly appalled by Judge Michele Simmons' lack of judicial ethics (§ 77-78). Therefore, Chief Judge Timothy C. Evans, Associate Judge John Thomas Carr, Attorney David Daudell, Attorney Lester Barclay, Attorney Julie A. Garmon, and Associate Judge Michele M. Pitman (formally: Judge Michele Simmons) has *"interest"* in the investigation and outcome of the proceeding *See* **55 ILCS 5/3-9008**

This Court has seen that it is *'reasonable'* to assume that the false conviction of Mr. Simmons was influenced by Michele Simmons' employee relationship with the Illinois Cook County Circuit Courts, (ICCCC) as an Illinois Cook County Circuit Court Criminal Judge. It is *'reasonable'* to assume that had Michele Simmons not been an Illinois Cook County Circuit Court Judge, the (ICCCC) would have thrown-out the CCSAO charges against Mr. Simmons for lack of evidence. Moreover, Mr. Simmons would have been treated fairly in his divorce from Michele Simmons. The handling of these matters by the Illinois Cook County Circuit Courts (ICCCC) raises questions that cry out for objective, unbiased investigation, including: (a) whether ICCCC acted to restrict, impede, and/or conceal supporting evidence of Mr. Simmons' innocence from court record. (b) whether the ICCCC, Illinois Cook County Chief Judge, Timothy C. Evans, Judge William J Kunkle, Judge John Thomas Carr, Judge Michele Simmons and/or other employees within the Illinois Cook County Circuit Courts (ICCCC) conspired to cover-up, suppress, and/or effect a means directly and/or indirectly to diminish and/or deprive Mr. Simmons' of his civil rights and liberties afforded by US Constitution. , i.e. inability to defend both criminally and/or domestically. Therefore, Chief Judge Timothy C. Evans, CCSA Anita Alvarez, ASA Paul Pavlus, Associate Judge William J. Kunkle, Associate Judge John Thomas Carr, Attorney David Daudell, Attorney Lester Barclay, Attorney Julie A. Garmon, and Associate Judge Michele M. Pitman (formally: Judge Michele Simmons) has *"interest"* in the investigation and outcome of the proceeding *See* **55 ILCS 5/3-9008**

This Court has seen that it is *reasonable* as we look out at the protest around the country, we see citizens demanding fairness and justice in our criminal justice system. That they matter too! See us! Their cry out that our criminal justice systems is not working with us but working against its citizens. That there is an unbalance in our justice system that favors some and not others; a system that unfairly targets, harasses, brutalizes, criminalizes, and even kills us; but, would never consider it of others. Some attribute this unbalance to the division between the haves and the have not's. It is no doubt that African-Americans are unfairly targeted by your criminal justice system for these abuses. African-Americans are saying our males matter, our family matters, our lives matter, and our fathers, mothers, sons, and daughters matter! Stop criminalizing and killing our innocent! Our nation's criminal justice has given huge latitude to our police, judiciary, and prosecutors before they can be truly called for their abuses. Which is not intended in The Constitution. Therefore, "We The People" have been forced to watch our justice system

This Court has seen that on the morning of June 7th, 2009, while Michele was in her tirade, for his safety, Frank immediately took pictures of SON#1 (Exhibit D); began audio recording Michele (Exhibit E); Hugged and kissed his two sons; and locked himself in the bathroom for his own personal safety (see: Hearing Transcript pg15 ln12 thru pg17 ln.1-15). Frank was not yelling, cussing, or even speaking to Michele. Because he knew, from years of experience and based upon her threats (see: Hearing Transcript pg 99, ln 22-23; pg 100 ln 1), just what to do to avoid a confrontation with Michele. He wanted out of their marriage.

This Court has seen, that it happen just as Michele had predicted for so many years. The persons entrusted by taxpayers to rescue Frank Simmons, knew Michele Simmons lying but chose to ignore him, to abuse him further, to criminalize him, and convict him, not because they had to; but because they were willingly to embody the persona of his vindictive and controlling abuser, Michele Simmons.

This Court has seen that was never about protecting Michele's job as the conspirators claim (§ 74-75); because each has demonstrated herein that they have the means to have made the whole thing go disappear just as easy as it started as their actions have demonstrated; rather than be faced with the difficult task of coercing a minor child to commit perjury against the father that he loves. This Court has seen from the handing of Officer S. Barry's Police Report # 09-3908, that Police Chief, Jeff Chudwin is personally willing to suppress any negative report filed against Associate Judge Michele Simmons (§ 104 - 105). This Court has seen the same with CCSA Anita Alvarez and the CCSAO's suppression of IDCFS' Report SCR #1868829-A (§ 42-44, 45-49). This Court has also seen Chief Judge Timothy C. Evans' willingness to first create a *'Conflict of Interest'* by assigning Judge William Kunkle (§ 62, 51) to preside *'People vs. Simmons'*. Where in a blatant act of concealment and suppression of evidence, Judge Kunkle; boldly ordered that in no way would he allow IDCFS and/or IDCFS' findings to be mentioned or

referred to in anyway during the course of the criminal trial proceedings (§ 63, 71, 85-87). Therefore, clearly, the conspirators personally have no reservations and have demonstrated the ability to suppress and conceal evidence and/or whatever they choose to omit in the course of *obstruct justice*.

This Court has seen, that it is obvious that the conspirators lame excuse about protecting Michele's career was just an excuse for the ASA Hit-Squad, Michele, Kunkle, and Alvarez to get back together like in their good ole days at the CCSAO were they just randomly stuck it to some helpless innocent soul. Protecting Michele's career was all Frank had been doing for the past 20 years when he called family members to report Michele's abuse instead of calling the police. None of the alleged Conspirators know the pain Frank endured from Michele before he said that's it. Frank Simmons had put ample time into the relationship and saw no change. He earned the right to say he wanted a divorce. Frank had been driven to the point where he could no longer, in anyway, bare to be intimate with his abuser, Michele Simmons. As Michele testifies that for the past two years, by choice, Frank had been sleeping on the downstairs sofa (see: Hearing Transcript pg28 ln1-9) and separated his banking from their join account. Therefore, he was it was apparent that Frank Simmons was already leaving their marriage.

This Court has seen that clearly the crimes committed against Frank Simmons' poor minor SON#1 are unconscionable to force a child to tell lies against the father he loves; one who has taken such an active role in his life. This Court has seen it is *reasonable* to assume that SON#1 was *coerced* into committing *perjury*. Once the conspirators' evil deed was done, they casted SON#1 aside, a minor to rustle with his role in the reason why his father was no longer around to participate in his life and that of his sister and little brother is no longer around. Wondering what he is going to say to his father when he sees him. Frank Simmons can hear the anguish and confusion in SON#1's statement to IDCFS on 8/10/09 and mutually feels his pain when he stated:

"that he loves his father and that he wants to see him.....that he does not know what he will say to his father."

This is the real tragedy and is criminal! Tim Evans, Anita Alvarez, and the other conspirators obviously do not care about SON#1's state of mind, he is not their child; but SON#1 is Michele Simmons' child. This is the real Michele Simmons, the conniving, extremely selfish, and the abusive person she is; one who does not care about who she hurts, one who will stop at nothing, even if it means using her own child as a pawn to affect her own personal resentments. This abuse is also evident from her history of actions (§ 21-25), including on the morning of June 7th, 2009 (§ 91-95) and the physical assault upon Mr. Simmons witnessed by Olympia Fields Police (§ 22, 96-98).

43

When we look out at the protest around the country, we see citizens demanding justice. That they matter too! See us! Their cry is that our criminal justice systems is not working with us but working against us, we the people. That there is an unbalance in our justice system that favors some and not others; a system that unfairly targets, harass, brutalize and even kill some but would never consider it to others. Some attribute this unbalance to the division between the haves and the have not's. It is no doubt that African-Americans and their communities are unfairly targeted by your criminal justice system for these abuses. African-Americans are saying our males matter, our family matters, our lives matter, and our fathers, mothers, sons and daughters matter! Stop criminalizing and killing our innocent! Our nation's criminal justice has given huge latitude to our police and prosecutors before they can be called for these abuses. But let not this Court be hoodwinked. The type of injustice demonstrated in *People vs. Frank Simmons'* transcends racial ethnicity. All this Court need do is revisit CCSA Anita Alvarez and the CCSAO handling for the Koschman Case and their similarities. All we need do is look out at Ferguson Missouri, Trevon Martin, David Koschman, and others.

This Court has seen that for now, Michele Simmons is nothing more than a felon on borrowed time. But the question becomes what of the family? The financial abuse (§ 53, 13, 55) levied by Judge Carr in domestic court reached its intended mark and purpose to financial destroy, Frank Simmons. Thus, seriously compromising Frank Simmons' ability to provide for his three children whom he has not seen in over six years. Therefore, there must be a correction and a reckoning.

This Court has seen that despite IDCFS recommendation that the CCSAO drop their domestic battery charges against Frank Simmons and seek to prosecute conspirator Judge Michele Simmons for "Malicious", false reporting of abuse pursuant to Rules 300, Section 300.30 (Exhibit B). Though received in October 2009, the CCSAO continued to deny having knowledge of and having received IDCFS' Report SCR #1868829-A. Moreover, alleged co-conspirator Illinois Cook County State's Attorney (CCSA) Anita Alvarez, former CCSAO colleague of Michele Simmons and long-time personal friend who actually attended the couple's wedding (§ 28-29), personally vowed (Exhibit G) that she would be handling the 'People v. Frank Simmons' criminal case and continued to endorse domestic battery charges against Frank Simmons. Anita Alvarez assigned allege co-conspirator, CCSAO Department Head: Assistant State's Attorney (ASA) Paul Pavlus from the Rolling Meadows Court House to the Bridgeview, Court House to prosecute the criminal case (§ 45-49). Therefore it is *'reasonable'* to assume that co-conspirators CCSA Anita Alvarez, ASA Paul Pavlus, CCSAO, and/or other conspirators has *"interest"* in the investigation and outcome of the proceeding *See 55 ILCS 5/3-9008.*

This petition is being filed because of Petitioners' concern that the false criminalization of Mr. Simmons was influenced by Michele Simmons' relationship with the Cook County State's Attorney, Anita Alvarez and their elite membership in the Cook County criminal justice system. Petitioners believe that had Michele Simmons not been a personal friend of Ms. Alvarez, the CCSAO would not have pursued charging Mr. Simmons. The handling of this matter by the Cook County State's Attorney Office (CCSAO) raises questions that cry out for objective, unbiased investigation, including: (a) whether CCSAO prepared false evidence. (b) whether the CCSAO, ASA Paul Pavlus, Illinois Cook County Chief Judge, Timothy C. Evans and/or other employees within the Cook County Circuit Courts (ICCCC) and CCSAO conspired to cover-up the false allegations brought by Michele Simmons. Therefore it is *reasonable* to assume that co-conspirators CCSA Anita Alvarez, ASA Paul Pavlus, CCSAO, and/or other conspirators has *"interest"* in the investigation and outcome of the proceeding *See 55 ILCS 5/3-9008*.

Illinois law provides a remedy for the situation in which a state's attorney faces a conflict of interest in investigating or prosecuting particular crimes: appointment of a special prosecutor. Section 55 ILCS 5/3-9008 (2000), states as follows:

> Appointment of attorney to perform duties. Whenever the State's attorney is sick or absent, or unable to attend, or is interested in any cause or proceeding, civil or criminal, which it is or may be his duty to prosecute or defend, the court in which said cause or proceeding is pending may appoint some competent attorney to prosecute or defend such cause or proceeding, and the attorney so appointed shall have the same power and authority in relation to such cause or proceeding as the State's attorney would have had if present and attending to the same . . . . Any attorney appointed for any reason under this Section shall possess all the powers and discharge all the duties of a regularly elected State's attorney under the laws of the State to the extent necessary to fulfill the purpose of such appointment, and Shall be paid by the county he serves not to exceed in any one period of 12 months . . . .

Even in situations where the statute does not specifically provide for appointment of a special prosecutor, courts have the inherent power to protect the due process rights of the people by appointing one. In re Appointment of Special State's Attorneys, 42 Ill.App.3d 176, 356 N.E.2d 195, 199 (3d Dist. 1976). A special prosecutor may be appointed at any stage in a case, even before formal charges are filed. Baxter v. Peterkin, 156 Ill.App.3d 564, 509 N.E.2d 156 (3d Dist. 1987). Thus, special prosecutors have frequently been appointed to investigate allegations of criminal wrongdoing. See, e.g., People v. Pawlaczyk, 189 Ill.2d 177, 724 N.E.2d 901 (2000) ; People v. Arrington, 297 Ill.App.3d 1, 696 N.E.2d 1229 (2d Dist. 1998); In re Appointment of Special Prosecutor, 164 Ill.App.3d 183, 517 N.E.2d 682 (5th Dist. 1987); Baxter v. Peterkin; People v. Sears; 49 Ill.2d 14, 273 N.E.2d 380 (1971).

The special prosecutor statute may be invoked by the court, by the state's attorney, or by a private citizen. Baxter v. Peterkin, 509 N.E.2d at 157. A citizen petitioning for a special prosecutor must allege specific facts, since mere conclusions are insufficient to warrant an appointment. People ex rel. Baughman v. Eaton, 24 Ill.App.3d 833, 321 N.E.2d 531 (4th Dist. 1974). The circuit court hearing such

petition has discretion in determining whether an appointment is necessary, and denial of the petition is an appealable order. 321 N.E.2d at 532.

Since, as explained above, State's Attorney Alvarez "is interested in" the investigation or prosecution of and false conviction of, the petitioners have demonstrated that appointment of a special prosecutor is appropriate and necessary in this case.

The obvious interest to be served by appointment of a special prosecutor to investigate the wrongdoing by CCSA Anita Alvarez, the CCSAO, Illinois Cook County Chief Judge, Timothy C. Evans, and the Cook County Circuit Courts (ICCCC) are society's general interest in enforcing our criminal laws and punishing those who have committed crimes. Appointment of a special prosecutor under the very unusual circumstances of this case would also serve at least two other salutary purposes. First, by thoroughly investigating the troubling history of this CCSAO wrongdoing, the special prosecutor can help this city begin to address, if not answer, certain very fundamental questions this scandal raises, i.e.:

How can our entire criminal justice system – defense counsel, judiciary, and CCSAO conspire to suppress and conceal evidence and to secure a false conviction?

WHEREFORE, Petitioners request that, in light of the conflicts under which Cook County State's Attorney Anita Alvarez and the CCSAO currently labor, this Court exercise the authority granted it under Illinois law and appoint a special prosecutor to investigate any and all wrongdoing arising from the criminalization of Frank Simmons.

**Dated this 13th of March, 2015**

_____

**Frank Simmons – Pro Se**

**Frank Simmons and Fred Simmons - Pro Se**
**925 W. Huron Street**
**Suite 211**
**Chicago, Illinois 60642**
**(312) 919-9320**

46